# EXHIBIT A

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

UBS FINANCIAL SERVICES INCORPORATED
OF PUERTO RICO,

        Petitioner,                                CIVIL DIVISION
                                                      CASE NO.: 2018-016567-CA-01

vs.

DAVID EFRON,

        Respondent.

_____/

## PETITIONER'S MOTION TO CONFIRM ARBITRATION AWARD

Petitioner UBS Financial Services Inc. ("UBS"),[1] by undersigned counsel, hereby moves this Court to confirm an arbitration award in UBS's favor rendered by a panel of independent arbitrators appointed by the Financial Industry Regulatory Authority ("FINRA") on November 2, 2022. In support of this motion, UBS states as follows:

1.      Because of the Court's familiarity with this long-running action, UBS only briefly summarizes it here. In May 2018, UBS commenced this action by filing a petition to confirm an award entered by an earlier panel of FINRA arbitrators dated May 17, 2018 (the "2018 Award"). In January 2019, the Court entered an order confirming the 2018 Award, which the Court reduced to judgment in May 2019. In February 2020, the Third District Court of Appeal reversed, due to the initial panel's denial of Respondent David Efron's second motion to postpone the 2018 arbitration hearings. *Efron v. UBS Fin. Servs. Inc. of P.R.*, 300 So.3d 733, 737 (2020). After further motion practice, in February 2021, the Court entered an Order directing the parties "to proceed with a rehearing of FINRA Arbitration No. 17-00109." Order (Feb. 12, 2021). After Efron refused

_____

[1] As noted in prior filings in this proceeding, UBS Financial Services Incorporated of Puerto Rico merged with UBS Financial Services Inc. effective July 31, 2021.

to engage in the FINRA proceedings, and further motions practice, in February 2022, the Court entered another Order directing the parties, under penalty of sanctions, "to proceed with a rehearing of their arbitration (FINRA Arbitration No. 17-00109)" before a new panel of arbitrators selected pursuant to FINRA rules. Order (Feb. 24, 2022).

2.      The parties jointly participated in the selection of the new panel of arbitrators pursuant to the rank-and-strike procedures set forth in FINRA's Code of Arbitration Procedure for Customer Disputes (the "FINRA Code"). The parties accepted the new panel's composition. *See* Exhibit "A" (Initial Prehearing Conference Scheduling Order, Apr. 25, 2022) at 2. After the new panel was selected, one arbitrator withdrew and was replaced pursuant to FINRA procedures.

3.      The rehearing was held from August 29 to September 2, 2022 at FINRA's offices in Boca Raton, Florida before the new panel of FINRA arbitrators. At the outset of the rehearing, the parties again accepted the composition of the arbitration panel. *See* Exhibit "B," Hearing Tr. (8/29/2022) Excerpt, at 7-8. The parties each had a full and fair opportunity to present their respective evidence and legal arguments during the rehearing. On September 30, 2022, at the request of the arbitrators, the parties also made posthearing submissions in support of their respective positions.

4.      On November 2, 2022, the FINRA arbitrators issued their award in favor of UBS, a copy of which is attached as Exhibit "C" (the "2022 Award"). The arbitrators awarded UBS the sum of $4,450,000.00 in compensatory damages, the sum of $529,854.80 in interest, and the sum of $1,501,000.00 in attorneys' fees and costs (excluding FINRA fees), for a total award of **$6,480,854.80**.  The arbitrators did not grant any relief to Efron.

5.      The 2022 Award states that it was "in full and final resolution of the issues submitted for determination" by the parties. Ex. C at 3.

6.      On November 2, 2022, the parties were served with the 2022 Award via FINRA's online Dispute Resolution portal.  *See* Exhibit "D" (award service letter).

7.      UBS now moves the Court for an order confirming the 2022 Award.

8.      This Court has jurisdiction under Section 9 of the Federal Arbitration Act (9 U.S.C. § 9), Sections 26.012(2) and 682.12 of the Florida Statutes, and the parties' Master Account Agreement. *See* Exhibit "E" (Master Account Agreement) at 16 ("The award of the arbitrators, or of the majority of them, shall be final, and judgment on the award rendered may be entered in any court of competent jurisdiction."). Efron has previously conceded that the Federal Arbitration Act governs the parties' arbitration. *See Efron*, 300 So.3d at 735-36 ("The transactions at issue occurred in interstate commerce, and, therefore, as UBS argues and Efron concedes, the arbitration was governed by the Federal Arbitration Act.").

9.      Section 9 of the Federal Arbitration Act provides that "at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9.

10.     This motion to confirm the 2022 Award is timely, as not more than one year has passed since the 2022 Award was issued on November 2, 2022. *See* 9 U.S.C. § 9 (providing for one year in which to seek confirmation of an arbitration award).

11.     No court has vacated, modified or set aside the 2022 Award, nor, upon information and belief, has Efron applied to vacate, modify or set aside the 2022 Award.

12.     Under FINRA rules, the 2022 Award shall bear interest from the date of the award (a) if not paid within 30 days of receipt, (b) if the award is the subject of a motion to vacate which is denied, or (c) if the arbitration panel otherwise specifies in the award. *See* FINRA Rule 12904(j);

see also Exhibit D at 1 (award service letter). The arbitration panel did not make any ruling regarding post-award interest. Therefore, the 2022 Award shall bear interest from the date of the award if not paid by December 2, 2022 (30 days from the date when FINRA transmitted the 2022 Award to the parties).

13.     In addition, if Efron contests confirmation of the 2022 Award, UBS is entitled to recover an award of its reasonable attorneys' fees and costs relating to this action under Section 682.15(3) of the Florida Statutes and the terms of the parties' Master Account Agreement.

WHEREFORE, Petitioner UBS respectfully moves the Court to (a) confirm the 2022 Award in its entirety and enter final judgment in favor of UBS on the 2022 Award; (b) enter an award of post-award, prejudgment interest from the date of the 2022 Award (November 2, 2022) until the date of judgment; (c) enter an award of UBS's reasonable attorneys' fees and costs relating to this action under Section 682.15(3) of the Florida Statutes and the terms of the parties' Master Account Agreement, if Efron contests confirmation of the Award; and (d) order such other and further relief as the Court deems just and proper.

Respectfully submitted,

s/ Alex J. Sabo

Alex J. Sabo, Esq. (FBN# 262821)
**BRESSLER, AMERY & ROSS, P.C.**
200 South Biscayne Blvd., Suite 2401
Miami, FL  33131
Tel: (305) 501-5480
Fax: (305) 501-5499
E-Mail: asabo@bressler.com

Christopher Nicholas Manning
(admitted pro hac vice)
**WILLIAMS & CONNOLLY LLP**
680 Maine Ave. S.W.
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029

4

CASE NO.: 2018-016567-CA-01

E-Mail: cmanning@wc.com

*Counsel for UBS Financial Services*
*Inc. (formerly UBS Financial*
*Services Incorporated of Puerto Rico)*

CASE NO.: 2018-016567-CA-01

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument was served by Electronic Mail via the Florida Court's ePortal filing system upon: Leslie B. Rothenberg, Esq., The Ferraro Law Firm, P.A., 600 Brickell Avenue, Suite 3800, Miami, Florida 33131, [lbr@ferrarolaw.com], *Attorney for Respondent,* on this 4th day of November, 2022.

*s/ Alex J. Sabo*

Alex J. Sabo, Esq. (FBN# 262821)
**BRESSLER, AMERY & ROSS, P.C.**
200 South Biscayne Blvd., Suite 2401
Miami, FL 33131
Tel: (305) 501-5480
Fax: (305) 501-5499
E-Mail: asabo@bressler.com

*Counsel for UBS Financial Services Inc. (formerly UBS Financial Services Incorporated of Puerto Rico)*

# EXHIBIT A

FINANCIAL INDUSTRY REGULATORY AUTHORITY
OFFICE OF DISPUTE RESOLUTION

| | |
|---|---|
| UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO,     Claimant, | &#124; &#124; &#124; |
| v. | &#124;   Arbitration No.: 17-00109 &#124; |
| DAVID EFRON,     Respondent. | &#124; &#124; &#124; |

_____/

# INITIAL PREHEARING CONFERENCE SCHEDULING ORDER

An initial prehearing telephonic conference was held in the above-captioned matter on 11 April 2022.  Participating in the hearing were:

| | |
|---|---|
| Chairperson: | Will Murphy |
| Panelist: | Marc Elias Narotsky |
| Panelist: | Thomas Mead Santoro |
| Claimant's Representative: | Christopher Manning, Esq. |
| Respondent's Representative: | Alfredo Fernandez Martinez, Esq. |
| Office of Dispute Resolution Staff: | Lisa Lasher |

The following was agreed upon during the conference and is now entered as the Initial Prehearing Conference Scheduling Order:

The following panelists made the following disclosures: Murphy has had and may now have other cases involving UBS and involving counsel connected to this case.

The Panel also invited any inquiries needed by counsel to address any concerns

Page 1 of 3

they might have related to the composition of the Panel.  No counsel had any questions.

The parties accepted the panel's composition.

Direct party communication shall be used solely to advise the panel that the parties have settled the case, that the claimant has withdrawn the claim or that the parties have jointly agreed to narrow, cancel or postpone a hearing.  Parties may use email for this purpose and FINRA staff are requested to follow this up via telephone if necessary to give any arbitrator adequate notice.

Counsel for Claimant is delivering to Counsel for Respondent copies of discovery already produced in this matter.  Claimant's counsel estimated the production at twenty thousand (20,000) pages.  Respondent's counsel requested sixty (60) days to determine whether he wishes to propound any additional discovery.  Counsel for Respondent shall have until 15 June 2022 to move for an opportunity to request additional discovery, and shall attach to any such motion a copy of any proposed discovery request.

The motion related to filing additional exhibits is moot.

The parties shall submit any and all hearing briefs by 9 August 2022.

The first scheduled hearing session on this matter shall begin at 10:00 am eastern time on 29 August 2022.  The following dates have also been reserved for this hearing (also commencing at the same time each day): 30 August 2022through and including 2 September 2022.  The aforementioned hearings shall be in Boca Raton, Florida.

The final hearings shall continue, as needed, on 19 September 2022 and continue through and including 21 September 2022, also commencing at 10:00 am eastern time. These additional three hearing dates shall be held in Miami, Florida.  The final hearing will be in person unless either counsel agree to hold the hearings via Zoom, or FINRA administratively cancels in person hearings on those dates, and in either of those instances shall be held via Zoom.  In addition, the parties may agree or the Panel may order that specific participants may appear and attend via Zoom.

Other rulings: As FINRA discourages arbitrators from doing their own legal "research" and includes in this locating the full text of authorities cited by the parties, parties are requested to provide a copy of the full text of any authority cited in any pleading or other filing.  The copy may be, but need not be, highlighted.

If the parties settle this matter with no further hearings, then the cost of this IPHC

shall be borne as follows, unless otherwise agreed in writing between the parties: one-half by the Claimant; one-half  by the Respondent.

        This order shall remain in effect unless amended by the Arbitration Panel.

Dated: 11 April 2022

*/s/ Will Murphy*
Will Murphy, Chairperson
on behalf of the Arbitration Panel

# EXHIBIT B

FINANCIAL INDUSTRY REGULATORY AUTHORITY

OFFICE OF DISPUTE RESOLUTION

UBS FINANCIAL SERVICES INCORPORATED
OF PUERTO RICO,

Claimant,

v.                      Arbitration No.: 17-00109

DAVID EFRON,

Respondent.

_____/

TRANSCRIPT OF ARBITRATION PROCEEDINGS

Volume 1

(Pages 1 - 304)


DATE TAKEN:   August 29, 2022

TIME:         10:21 a.m. - 5:37 p.m.

PLACE:        5200 Town Center Circle
              Tower I, Suite 200
              Boca Raton, FL 33486

BEFORE:       Will Murphy, Chairperson
              Theodore R. Bayer, Panelist
              Thomas Mead Santoro, Panelist


              This cause came on to be heard at the time
and place aforesaid, when and where the following
proceedings were stenographically reported by:

              LAURA E. MELTON, RMR, CRR, FPR

Arbitration Proceedings Volume 1
August 29, 2022

```
APPEARANCES:


On behalf of the CLAIMANT:

                WILLIAMS & CONNOLLY LLP
                680 Maine Avenue SW
                Washington, DC 20024
                (202) 434-5121
                BY:  CHRISTOPHER N. MANNING, ESQ.
                cmanning@wc.com

                MICHAEL R. FISHMAN, ESQ.
                mfishman@wc.com


On behalf of RESPONDENT:

                DELGADO & FERNÁNDEZ
                1001, Cll San Roberto
                San Juan, Puerto Rico 00927
                (787) 523-5647
                BY:  ALFREDO FERNÁNDEZ-MARTÍNEZ, ESQ.
                afernandez@delgadofernandez.com

                PEDRO HERNANDEZ-FRIERE, ESQ.
                phernandez@delgadofernandez.com


Also Present:

Shauna Myers
David Efron
```

Arbitration Proceedings Volume 1
August 29, 2022

1    Thereupon,

2    the following proceedings began at 10:21 a.m.:

3            MR. MURPHY:  Okay.  Now we are on the

4            record.  Let me just pull up one of the documents

5            from the case.

6            Okay.  Good morning.  We are at 10:22 on

7            the 29th of August, 2022, on Case 17-00109, UBS

8            Financial Services Incorporated, Puerto

9            Rico vs. David Efron.  This is Will Murphy, the

10           Chair.  I'm a public arbitrator.  I've submitted

11           my oath.  I don't have any new disclosures to

12           make.  I've probably disclosed I've had, hence,

13           probably have now, other cases involving UBS.

14           That's my introduction.

15           Do you want to go ahead and introduce

16           yourself?

17           MR. BAYER:  My name's Ted Bayer.  I'm a

18           public arbitrator.  I don't have any other cases

19           with UBS or with David Efron.

20           MR. SANTORO:  I'm Tom Santoro, and I have

21           no further disclosures other than what are on my

22           disclosures.  So...

23           MR. MURPHY:  Could we have everyone enter

24           their appearance?

25           MR. MANNING:  Sure.  I'm

1    Christopher Manning.  I'm here for UBS Financial

2    Services which has merged with UBS Financial

3    Services Incorporated of Puerto Rico.  So the

4    entity now is UBS Financial Services Incorporated.

5         With me are Michael Fishman, my colleague

6    from Williams & Connolly; Ken Crowley, who is from

7    UBS Financial Services; Shauna Myers, who is from

8    Williams & Connolly.

9         MR. FERNANDEZ:  Good morning.  My name is

10   Alfredo Fernandez.  I am the attorney for

11   respondent, David Efron.  Together with me is

12   attorney Pedro Hernandez from my office, and

13   Mr. Efron.

14        MR. EFRON:  Good morning.

15        MR. MURPHY:  Okay.  And you were noting, by

16   agreement of the parties, we also have a court

17   reporter present.

18        MR. MANNING:  That's correct.  And I think,

19   pursuant to the FINRA rule, we would propose to

20   have the transcript of the court reporter prepared

21   to be the official record of the proceedings.

22        MR. FERNANDEZ:  Yes, we are agreed to that.

23        MR. MURPHY:  Okay.  Does everyone accept

24   the composition of the panel?

25        MR. MANNING:  Yes.

Arbitration Proceedings Volume 1
August 29, 2022

1        MR. FERNANDEZ:  Yes, we do.

2        MR. MURPHY:  Okay.

3        MR. MURPHY:  I promise I won't put you

4   through the whole script.  I like to refer to the

5   report.

6        Has everyone submitted their assessment,

7   the health assessment to say you are vaccinated or

8   tested negative?

9        MR. MANNING:  Yes, we have.

10       I think now you're supposed to just review

11  the assessment, and we're supposed to affirm to

12  you here that we are in compliance.  And we are,

13  yes.

14       MR. MURPHY:  All right.  Is there anyone

15  who is not in compliance with those requirements?

16       MR. FERNANDEZ:  We filled out the

17  attestation that is in the portal, so we are

18  completely all vaccinated.

19       MR. MURPHY:  All right.  Very good.

20       And the same for the panel?  It's all done.

21       MR. SANTORO:  Yes.

22       MR. BAYER:  (Nods head.)

23       MR. MURPHY:  We took the panels through

24  their oath.

25       I will go through the formal opening if you

Arbitration Proceedings Volume 1
August 29, 2022

```
1   want.  If you've heard it enough times before that
2   you don't want me to, I will skip past that.
3         MR. FERNANDEZ:  I have heard it many times.
4         MR. MANNING:  We are fine waiving the
5   reading.
6         MR. MURPHY:  Okay.  You think -- you know
7   our obligation is to provide you a fair hearing
8   and to be neutral, et cetera.  We will get to oath
9   when we get to a witness.  Arbitrator's
10  exhibits -- so we've got the pleadings, the
11  agreements -- submission agreements.
12        Anything else that should be in the
13  Arbitrator's Exhibit 1?
14        MR. FISHMAN:  I think, pursuant to the
15  parties, on April 2nd, UBS submitted five proposed
16  additions to Arbitrator's Exhibit 1.  I understand
17  respondent objected to four of those, but the one
18  that was not objected to was the order denying
19  David -- sorry -- the order granting UBS's motion
20  to dismiss Mr. Efron's counterclaims.
21        MR. FERNANDEZ:  That's on the record.
22        MR. FISHMAN:  Uh-huh.
23        MR. MURPHY:  Okay.  So the ones not
24  objected to will be considered part of
25  Arbitrator's Exhibit 1, and the others we'll get
```

Arbitration Proceedings Volume 1
August 29, 2022

```
1                        CERTIFICATE

2

3     STATE OF FLORIDA              )

4     COUNTY OF BROWARD             )

5

6

7              I, Laura E. Melton, RMR, CRR, FPR, State of

8     Florida at Large, certify that I was authorized to and

9     did stenographically report the foregoing proceedings and

10    that the transcript is a true and complete record of my

11    stenographic notes.

12

13             Dated this 8th day of September, 2022.

14

15

16

17             _____

18             LAURA E. MELTON, RMR, CRR, FPR

19

20

21

22

23

24

25
```

# EXHIBIT C

**Award**
**FINRA Dispute Resolution Services**

In the Matter of the Arbitration Between:

<u>Claimant</u>                                          <u>Case Number</u>: 17-00109
UBS Financial Services Incorporated of
Puerto Rico

          vs.

<u>Respondent</u>                                        <u>Hearing Site</u>: Boca Raton
David Efron

Awards are rendered by independent arbitrators who are chosen by the parties to issue final, binding decisions. FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award.

Nature of the Dispute: Member vs. Customer

This case was decided by an all-public panel.

## REPRESENTATION OF PARTIES

For Claimant UBS Financial Services Incorporated of Puerto Rico, which was merged into UBS Financial Services Inc. ("UBSFS") in 2021, UBSFS appeared as successor in interest and was represented by: Christopher N. Manning, Esq. and Michael R. Fishman, Esq., Williams & Connolly LLP, Washington, District of Columbia.

For Respondent David Efron: Alfredo Fernández-Martínez, Esq. and Pedro Hernández-Freire, Esq., Delgado & Fernández, LLC, San Juan, Puerto Rico.

## CASE INFORMATION

Statement of Claim filed on or about: January 10, 2017.
Claimant signed the Submission Agreement: January 13, 2017.

Answer, Affirmative Defenses, and Counterclaims in Response to the Statement of Claim ("Answer and Counterclaim") filed by Respondent on or about: April 26, 2017.
Respondent signed the Submission Agreement: April 17, 2017.

Answer to Counterclaim filed by Claimant on or about: June 19, 2017.

FINRA Dispute Resolution Services
Arbitration No.  17-00109
<u>Award Page 2 of 5</u>

## <u>CASE SUMMARY</u>

Claimant asserted the following causes of action: contractual indemnification; unjust enrichment; and equitable contribution. The causes of action relate to a post-judgment settlement payment that Claimant made to Respondent's ex-wife following litigation ("the Candelario litigation") in the U.S. District Court for the District of Puerto Rico.

Unless specifically admitted in the Statement of Answer, Respondent denied the allegations made in the Statement of Claim and asserted various affirmative defenses.

In the Counterclaim, Respondent asserted the following causes of action: negligence; breach of implied contract; and breach of fiduciary duty. The causes of action relate to Claimant's handling of Respondent's account subsequent to a ruling made in the Candelario litigation.

Unless specifically admitted in the Answer to Counterclaim, Claimant denied the allegations made in the Counterclaims and asserted various affirmative defenses

## <u>RELIEF REQUESTED</u>

In the Statement of Claim*,* Claimant requested: $4,450,000.00 in compensatory damages; pre-judgment interest; attorneys' fees and costs in connection with this proceeding and the Candelario litigation; and such other and further relief as the Panel deemed just, equitable and proper.

In the Statement of Answer, Respondent requested: dismissal with prejudice of all claims asserted in the Statement of Claim; attorneys' fees; and costs.

In the Counterclaim, Respondent requested: compensatory damages in excess of $4,000,000.00; attorneys' fees and costs in connection with this proceeding and the Candelario litigation; pre-judgment interest; and punitive damages in an unspecified amount.

In the Answer to Counterclaim, Claimant requested: judgment in its favor and against Respondent on all counterclaims asserted; judgment in its favor and against Respondent on all claims asserted in the Statement of Claim; and that the Panel grant the relief requested in Claimant's Statement of Claim.

At the hearing, Claimant requested the sum of $14,449,179.42, comprised of:

(1) Settlement payment of $4,450,000.00, plus accrued interest thereon through October 21, 2022 in the amount of $2,384,346.58;
(2) Litigation expenses from 2008-2016 in the amount of $3,676,461.79, plus accrued interest thereon through October 21, 2022 in the amount of $1,969,878.44; and
(3) Collection expenses from 2016-2022 in the amount of $1,968,492.61.

FINRA Dispute Resolution Services
Arbitration No.  17-00109
Award Page 3 of 5

## OTHER ISSUES CONSIDERED AND DECIDED

The Arbitrators acknowledge that they have each read the pleadings and other materials filed by the parties.

During the hearing, Respondent requested a reasoned award and Claimant did not. The Panel did not provide an explanation.

The Award in this matter may be executed in counterpart copies.

## AWARD

After considering the pleadings, the testimony and evidence presented at the hearing, and any post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1.  Respondent is liable for and shall pay to Claimant the sum of $4,450,000.00 in compensatory damages, plus $529,854.80 in interest.

2.  In accordance with the terms of the parties' Master Account Agreement, Respondent is liable for and shall pay to Claimant the sum of $1,501,000.00 in attorneys' fees and costs (excluding FINRA fees).

3.  Prior to the appointment of this Panel, Respondent's counterclaims were dismissed pursuant to Rule 12206 of the Code of Arbitration Procedure ("Code").  As such, those claims were not considered.

4.  Any and all claims for relief not specifically addressed herein, including any requests for punitive damages and treble damages are denied.

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees
FINRA Dispute Resolution Services assessed a filing fee* for each claim:

| | |
|---|---|
| Initial Claim Filing Fee | =$  3,400.00 |
| Counterclaim Filing Fee | =$  2,000.00 |

*The filing fee is made up of a non-refundable and a refundable portion.*

### Member Fees
Member fees are assessed to each member firm that is a party in these proceedings or to the member firm(s) that employed the associated person(s) at the time of the event(s) giving rise to the dispute. Accordingly, as a party, Claimant is assessed the following:

FINRA Dispute Resolution Services
Arbitration No.  17-00109
Award Page 4 of 5

Member Surcharge                                                          =$  3,025.00
Member Process Fee                                                       =$  6,175.00

**Discovery-Related Motion Fees**
Fees apply for each decision rendered on a discovery-related motion.
                                                                         =$     600.00
One (1) decision on a discovery-related motion on the papers
with the Panel @ $600.00/decision ($200/arbitrator)

Respondent submitted one (1) discovery-related motion

_____
Total Discovery-Related Motion Fees                                      =$     600.00

The Panel has assessed the total $600.00 in discovery-related motion fees to
Respondent.

**Contested Motion for Issuance of Subpoena Fees**
Fees apply for each decision on a contested motion for the issuance of a subpoena.

Respondent submitted one (1) contested motion for issuance of a subpoena

_____
Total Contested Motion for Issuance of Subpoena Fees                     =$     750.00

The Panel has assessed the total $750.00 in contested motion for issuance of subpoena
fees to Respondent.

**Hearing Session Fees and Assessments**
The Panel has assessed hearing session fees for each session conducted. A session is
any meeting between the parties and the Arbitrator(s), including a pre-hearing
conference with the Arbitrator(s), which lasts four (4) hours or less. Fees associated with
these proceedings are:

One (1) pre-hearing session with the Panel @ $1,400.00/session           =$  1,400.00
Pre-Hearing Conference:   April 11, 2022              1 session

Ten (10) hearing sessions @ $1,400.00/session                           =$ 14,000.00
Hearings:                    August 29, 2022          2 sessions
                             August 30, 2022          2 sessions
                             August 31, 2022          2 sessions
                             September 1, 2022         2 sessions
                             September 2, 2022         2 sessions

_____
Total Hearing Session Fees                                              =$ 15,400.00

The Panel has assessed the total $15,400.00 in hearing session fees to Respondent.

All balances are payable to FINRA Dispute Resolution Services and are due upon
receipt.

FINRA Dispute Resolution Services
Arbitration No.  17-00109
Award Page 5 of 5

## ARBITRATION PANEL

| | | |
|---|---|---|
| Will Murphy | - | Public Arbitrator, Presiding Chairperson |
| Theodore Roy Bayer | - | Public Arbitrator |
| Thomas Mead Santoro | - | Public Arbitrator |

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein and who executed this instrument, which is my award.

## Concurring Arbitrators' Signatures

*Will Murphy*                                    **11/02/2022**
_____        _____
Will Murphy                                        Signature Date
Public Arbitrator, Presiding Chairperson

*Theodore Roy Bayer*                         **11/01/2022**
_____        _____
Theodore Roy Bayer                            Signature Date
Public Arbitrator

*Thomas Mead Santoro*                       **11/01/2022**
_____        _____
Thomas Mead Santoro                          Signature Date
Public Arbitrator

Awards are rendered by independent arbitrators who are chosen by the parties to issue final, binding decisions. FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award.

November 02, 2022
_____
Date of Service (For FINRA Dispute Resolution Services use only)

# EXHIBIT D



**TO:**        Christopher N. Manning, Esq.
               Alfredo Fernandez Martinez, Esq.

**CC:**        Theodore Bayer
               Will Murphy
               Thomas Santoro

**From:**      Lisa D. Lasher
               Senior Case Administrator

**Subject:**   FINRA Dispute Resolution Services Arbitration Number 17-00109
               UBS Financial Services Incorporated of Puerto Rico vs. David Efron

**Date:**      November 2, 2022

Awards are rendered by independent arbitrators who are chosen by the parties to issue final, binding decisions. FINRA makes available an arbitration forum—pursuant to rules approved by the SEC—but has no part in deciding the award. Attached please find the decision reached by the arbitrator(s) in the above-referenced matter. Accordingly, we have closed this case and removed it from our arbitration docket

Responsibility to Pay Monetary Award

FINRA rules provide that all monetary awards shall be paid within 30 days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction. An award shall bear interest from the date of the award:

- If not paid within 30 days of receipt;
- If the award is the subject of a motion to vacate which is denied; or
- As specified by the panel in the award.

Interest shall be assessed at the legal rate, if any, then prevailing in the state where the award was rendered, or at a rate set by the arbitrator(s).

Expedited Suspension Proceedings for Non-Payment of Awards

Article VI, Section 3 of the FINRA By-Laws and FINRA Rule 9554 permit FINRA to suspend or cancel the registration of any firm or associated person that fails to comply with a FINRA arbitration award.

Firms are required to notify FINRA in writing within 30 days of receipt of an award that they or their associated persons have paid or otherwise complied with the award, or to identify a valid basis for non-payment. We also request that prevailing claimants notify us in writing when their awards have not been paid within 30 days of receipt of the award.

**Investor protection. Market integrity.**     FINRA Dispute Resolution Services     Boca Center Tower 1        t   561 416 0277
                                                Southeast Regional Office            5200 Town Center Circle    www.finra.org
                                                                                     Suite 200
                                                                                     Boca Raton, FL
                                                                                     33486-1017

Written notification concerning award compliance or lack thereof should be directed to:

Chrystal Loyer, Associate Director
FINRA Dispute Resolution Services
Brookfield Place, 200 Liberty Street, 11th Floor
New York, NY 10281
(212) 858-4325 | Chrystal.Loyer@finra.org

<u>Notice to FINRA Firms</u>

Please note that FINRA has also emailed a copy of this letter and the attached decision directly to the Executive Representative, Chief Compliance Officer, and Regulatory Inquiries Liaison of the brokerage firm.

<u>Right to File Motion to Vacate Award</u>

FINRA rules provide that, unless the applicable law directs otherwise, all awards rendered are final and are not subject to review or appeal. Accordingly, FINRA has no authority to vacate this award. Any party wishing to challenge the award must make a motion to vacate the award in a federal or state court of appropriate jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. § 10, or applicable state statute. There are limited grounds for vacating an arbitration award, and a party must bring a motion to vacate within the time period specified by the applicable statute. If you are not represented by counsel and wish to challenge the award, we urge you to seek legal advice regarding any rights or remedies available to you.

<u>Forum Fees</u>

You will receive separately an invoice that reflects the fees assessed and any outstanding balance or refund due. Fees are due and payable to FINRA upon receipt of the invoice and should be sent to the address specified on the invoice. Any applicable refunds will also be sent under separate cover approximately 45 days after the case closes. All questions regarding payment of fees and refunds should be directed to FINRA Finance at (240) 386-5910.

<u>Expungement</u>

Brokers who obtain court confirmation of an award recommending expungement must forward a copy of the court order to CRDExpungementRequest@finra.org.

<u>Party Experience Survey</u>

FINRA encourages parties to complete a Party Experience Survey, which can be submitted through the DR Portal, at the conclusion of every case. We will utilize your comments in our ongoing efforts to evaluate and improve the services our forum provides. In the DR Portal, go to the "Drafts & Submissions" tab for the associated case, select "Party Experience Survey" as the Submission Type, and press the "Start" button to access the form. If you did not use the DR Portal to manage your case, you may send an email with your feedback regarding the case to your assigned Case Administrator.

<u>Party Submissions to Arbitrators After a Case Closes</u>

FINRA rules provide that parties may not submit documents to arbitrators in cases that have been closed except under the following limited circumstances: 1) as ordered by a court; 2) at the request of any party within 10 days of service of an award, for typographical or computational errors, or mistakes in the description of any person or property referred to in the award; or 3) if all parties agree and submit documents within 10 days of service of an award. Any documents, if submitted, must be sent through FINRA.

### Questions Concerning Award

If you have any questions, please do not hesitate to contact me at 561-362-7932 or by email at Lisa.Lasher@finra.org. Parties should not directly contact arbitrators under any circumstances.

LYL:dm0:LC09A
idr: 10/25/2022

RECIPIENTS:
Christopher N. Manning, Esq., Williams & Connolly LLP, 680 Maine Avenue SW, Washington, DC 20024
On Behalf Of: UBS Financial Services Inc. Of PR

Alfredo Fernandez Martinez, Esq., Delgado Fernandez LLC, PO Box 11750 Fernandez Juncos Street, San Juan, PR 00910-1750
On Behalf Of: David Efron

CC:
Theodore Bayer
Will Murphy
Thomas Santoro

# EXHIBIT E

# UBS PaineWebber

## Account Application and Agreement for Individuals, their Estates, Trusts and Custodial Accounts

Account Number: **0059-36**     SS#/TIN: **0081**

### 1. Account Ownership

Select the type of ownership

**Joint Owners***
- Community Property
- Tenants in Common
- Tenants by Entirety
- Joint Tenants with Rights of Survivorship
- Other: _____

☑ Sole Owner

☐ Custodian (UGMA/UTMA)

☐ Guardian/Committeeman/Conservator

☐ Estate

☐ Trust

*Please read carefully the Joint Agreement section of the attached Master Account Agreement.

**Trust**
Is the Trustee UBS PaineWebber designated?
☐ Yes ☐ No

Is there more than one Trustee for this account?
☐ Yes ☐ No *If yes, specify how many*
Trustees: ____, then complete the Account Ownership Information Addendum

Trust is setup: ☐ Intervivos  ☐ Testamentary

### 2. Account Ownership Information

Complete this section for: a Sole Owner Account, the Minor for a Custodial Account, the Primary Account Holder for a Joint Account, the Individual on whose behalf the Guardian Account is being opened, the Trust for a Trust Account or the Estate for an Estate Account.

**Sole Owner/Primary Account Holder/Individual/Trust/Estate**

First Name/Trust/Estate: Daniel     Middle Name:     Last Name: Efron

Street Address 1: PO BOX 29314

Social Security/Taxpayer ID #: **0081**   Date of Birth: 11-16-52   Tax Bracket: ___

Street Address 2:

Marital Status (Select One): ☑ Single ☐ Married ☐ Divorced ☐ Widowed   Gender: ☑ Male ☐ Female   Number of Dependents: 3

| Dependent Name (First/Last) | Social Security # | Date of Birth |
|---|---|---|
| 1) | | |
| 2) | | |
| 3) | | |

City: San Juan   State: PR   Zip: 00929-0314

Location of Address: ☑ Home-Legal Residence ☐ Business-Primary ☐ Other (specify): ___

Country of Citizenship: ☑ USA ☐ Other (specify): ___

E-mail Address:

**Telephone Contact Information**
Residence: 753-6455   Cellular:
Home Fax:   Pager:

Emergency Contact Name (required if client is single, divorced, or widowed): VICTOR HERNANDEZ

Emergency Contact's Telephone: (787) 765-1535

### Employment Information

Status (select one): ☑ Employed ☐ Retired ☐ Self Employed ☐ Student ☐ Other (specify): ___   Industry:

Employer's Name: Tark Development Corp   Occupation: Lawyer - Developed

Employer's Street Address: PO BOX 29033   Business Telephone: 765-1535   Business Fax:

City: San Juan   State: PR   Zip: 00929

Specify any securities firms or other financial institutions with which you or an immediate family member are affiliated (NYSE Rule 407):

Is the Account Holder, any Trustee or Director/Principal Officer, or any of his/her immediate family members, a Control Person of any publicly traded corporation (examples of Control Persons are Policy Making Officers, Directors or 10% shareholders)? : ☐ Yes ☑ No
If yes, please specify company and %: ___%

Is the Account Holder an employee or related to an employee of UBS AG, its subsidiaries or affiliates (e.g.; UBS PaineWebber Inc., UBS Warburg LLC)? ☐ Yes ☑ No
If yes, please specify:

UBS AG, or its affiliate or subsidiary   Employee Name and SS#

### Financial Information (This information will be kept strictly confidential.)

Annual Income: 1.4M   Liquid Assets: 1,000,000   Net Worth (exclusive of residence): 1.4M

List financial firms where other accounts are held:

Investment Experience (in years): ___ Equities ___ Bonds ___ Futures ___ Options-Buy ___ Options-Sell

Bank Reference - Bank Name: Banco Popular - Hato Rey   Bank Reference - Bank Telephone:

©2001 UBS PaineWebber Inc. All Rights Reserved. Member SIPC.     1

UBS PaineWebber

SS#/ [redacted] 0081

## ③ Joint Account Holder/Parent /Guardian/Committeemen/Conservator/Trustee/Executor/Administrator

Complete this section for: the **Joint Account Holder** for a Joint Account, the **Parent** or **Guardian** for a Custodial Account, the **Guardian/Committeeman/Conservator** managing the account, the **Trustee** for a Trust Account or the **Executor/Administrator** for an Estate Account. Please note that joint ownership of property is an important part of estate planning and involves important legal and tax consequences. Please consult your legal and tax advisors if you have any questions regarding your joint account ownership selection. Note: Non-resident aliens who elect to maintain a joint account agree in the Master Account Agreement that the account will be governed by New York law.

### Joint Account Holder/Parent /Guardian/Committeemen/Conservator/Trustee/Executor/Administrator

| First Name: | | | Middle Name: | Last Name: | |
|---|---|---|---|---|---|
| Street Address 1: | | | Social Security/Taxpayer ID #: | Date of Birth: | Tax Bracket: |
| Street Address 2: | | | Marital Status (Select One): ☐ Single ☐ Married ☐ Divorced ☐ Widowed | Gender: ☐ Male ☐ Female | Number of Dependents: |

| | Dependent Name (First/Last) | Social Security # | Date of Birth |
|---|---|---|---|
| City: / State: / Zip: | 1) | | |
| Location of Address: ☐ Home-Legal Residence ☐ Business-Primary ☐ Other (specify): ____ | 2) | | |
| | 3) | | |

| Country of Citizenship: ☐ USA ☐ Other (specify): | Telephone Contact Information | |
|---|---|---|
| | Residence: | Cellular: |
| E-mail Address: | Home Fax: | Pager: |

| Emergency Contact Name (required if client is single, divorced, or widowed): | Emergency Contact's Telephone: |
|---|---|
| | |

### Employment Information

| Status (select one): ☐ Employed ☐ Retired ☐ Self Employed ☐ Student ☐ Other (specify):____ | Industry: |
|---|---|
| Employer's Name: | Occupation: |
| Employer's Street Address: | Business Telephone: / Business Fax: |
| City: / State: / Zip: | Specify any securities firms or other financial institutions with which you or an immediate family member are affiliated (NYSE Rule 407): |
| Is the Account Holder, any Trustee or Director/Principal Officer, or any of his/her immediate family members, a Control Person of any publicly traded corporation (examples of Control Persons are Policy Making Officers, Directors or 10% shareholders)? : ☐ Yes ☐ No If yes, please specify company and %: ____ ____ ____% | Is the Account Holder an employee or related to an employee of UBS AG, its subsidiaries or affiliates (e.g.; UBS PaineWebber Inc., UBS Warburg LLC)? ☐ Yes ☐ No If yes, please specify: |
| | UBS AG, or its affiliate or subsidiary    Employee Name and SS# |

### Financial Information *(This information will be kept strictly confidential.)*

| Annual Income: | Liquid Assets: | Net Worth (exclusive of residence): |
|---|---|---|
| List financial firms where other accounts are held: | Investment Experience (in years): ___ Equities ___ Bonds ___ Futures ___ Options-Buy ___ Options-Sell | |
| Bank Reference - Bank Name | Bank Reference - Bank Telephone ☐ | |

2

©2001 UBS PaineWebber Inc. All Rights Reserved. Member SIPC.

## ❋ UBS|PaineWebber

Account Number [____]C05̄3 [____] SS#/TIN [____]0081

### 4. Account Investment Objectives

**Return Objective (select one):**
- ☐ Capital Appreciation - Investments seeking growth of principal rather than the generation of income.
- ☐ Current Income - Investments seeking the generation of income.
- ☒ Current Income and Capital Appreciation - Investments seeking both the generation of income and the growth of principal.

**Primary Risk Profile (select one):**
- ☐ Aggressive/Speculative - Seeks the potential for significant appreciation; willing to accept a high degree of risk of loss of principal.
- ☒ Moderate - Seeks potential returns with a lower risk of loss of principal.
- ☐ Conservative - Seeks securities that are most likely to preserve principal with low risk.

**Secondary Risk Profile (if applicable):**
- ☐ Aggressive/Speculative
- ☐ Moderate
- ☐ Conservative

### 5. Resource Management Account Features

If you would like to add Resource Management Account (RMA®) features to your account, please complete this section. Otherwise, skip to section 6. The following features apply ONLY for RMA. The annual fee for an RMA is $125, which is deferred for the first year.

#### Daily Sweep of Uninvested Cash Balances*

Select which sweep investment option you would like for your RMA (select one):

- ☐ Money Market Portfolio
- ☐ New Jersey Municipal Fund
- ☐ California Municipal Fund
- ☐ Tax-Free Fund
- ☐ U.S. Government Portfolio
- ☐ New York Municipal Fund

*Money market funds are sold by prospectus only and other sweep investment options are sold by offering documents. Tax-free and municipal funds are not available for retirement accounts. State municipal funds are available only to residents of those states, respectively.

#### Platinum MasterCard® Debit Card*

☐ If you would like a Platinum MasterCard debit card, please indicate the number of cards by checking the appropriate box: ☐ 1 ☐ 2

If your name(s) exceeds 24 characters, including spaces, please indicate below how your name(s) should appear (not exceeding 24 characters)

Name 1: _____

Name 2: _____
*Only one card per account holder can be issued.

#### RMA Direct Deposit

☐ If you would like to have your payroll or other recurring payments automatically deposited into your RMA, please check this box. Complete the RMA Direct Deposit Application attached and send it to the employer or organization making the deposit.

#### UBS PaineWebber Rewards

☐ Earn points toward merchandise, travel and gift certificates by using your Platinum MasterCard for purchases. If you would like to enroll in this program, please check this box. Annual program fee of $50 applies.

#### Electronic Funds Transfer (EFT) Service

EFT allows the transfer of money electronically between UBS PaineWebber accounts and accounts held with outside financial institutions.

- ☐ Transfer funds online and through the IVR system, ResourceLine□. Please note: in order to transfer your funds online you must be enrolled in online services. Complete the account information online or on the Electronic Funds Transfer Addendum.
- ☐ Transfer funds using ResourceLine only. Complete the Electronic Funds Transfer Service Addendum only.

#### Check Writing

If you would like to receive checks for your account, please enroll by selecting a check style: ☐ Wallet ☐ 3-page desk ☐ Other*

*To order a different check style, please contact your branch office.

FIRST ORDER OF 50 WALLET CHECKS IS FREE. ALL OTHER ORDERS INVOLVE A FEE.
Please print the name(s), address and any additional information that you would like to appear on your checks.

_____

_____

Print mailing address for delivery of checks, if different from address on checks:

_____

#### Bill Payment Service

Bill Payment allows you to pay your bills online and/or make payments to a third party vendor without writing and mailing a check.

- ☐ Pay bills online and through the IVR system, ResourceLine□. Please note: in order to pay your bills online you must be enrolled in online services. Complete the Vendor/Payee information online.
- ☐ Pay bills using ResourceLine only. Complete the bill Payment Service Addendum only.

### 6. Account Features

#### Margin*

Accounts automatically come with margin unless they are Retirement, UGMA/UTMA or Estate accounts. Most managed programs cannot have margin. ☐ Check here if you do not want margin.

If your account will have margin, you are required to answer the following question:

Do you intend to engage in "pattern day trading" as defined by NYSE Rule 431:** ☐ Yes ☐ No

*Margin is not suitable for all clients. Please review UBS PaineWebber's Loan Disclosure Statement carefully for information on the risks involved with using margin.

**"Day trading" means purchasing and selling or selling and purchasing the same security on the same day in a **margin account**. "Pattern day trading" means executing four or more day trades within five business days if the number of day trades exceeds six percent of the total trades during that period.

#### Cashfund*

Available only if you have not chosen any RMA Features.
☒ Check here if you want UBS PaineWebber Cashfund.
*UBS PaineWebber Cashfund, Inc. is sold by prospectus only.

#### Online Services

☐ Check here if you would like to obtain online access to account information, the latest research, market data, and more. This service is available for all premier account types, including RMA, Business Services Account BSA* and Managed Accounts.

#### Duplicate Parties

☐ Check here if you would like duplicate trade confirmations and statements sent to additional individuals.
If checked, please complete the Duplicate Party Addendum.

---

©2001 UBS PaineWebber Inc. All Rights Reserved. Member SIPC.　　　3

UBS-EFRON_ 003763

SS#/TIN [redacted] 2081

## 7. Funding Your Account

Please provide your intended method of funding this account. You may change your method of funding after submitting this form.

☐ Check  I have enclosed a check for $_____ made payable to UBS PaineWebber Inc.

☑ Transfer from another Firm (requires an Account Transfer form and/or Liquidation Authorization Letter).

☐ Transfer from an existing UBS PaineWebber Account (requires a Letter of Authorization).

## 8. Client Agreement

BY SIGNING BELOW, I UNDERSTAND, ACKNOWLEDGE AND AGREE: 1. that UBS PaineWebber does not provide legal or tax advice; 2. that in accordance with the last paragraph of the Master Account Agreement entitled "Arbitration" I am agreeing to arbitrate any controversies which may arise with, among others, UBS PaineWebber in accordance with the terms outlined therein; 3. if my account is established with margin, that pursuant to the Master Account Agreement, certain of the securities in my account may be loaned to UBS PaineWebber or to others; 4. if I have not selected any RMA features, I understand that I will be opening a Basic Investment Account and will be bound by the terms and conditions of the Master Account Agreement; 5. if I have selected any RMA features, I understand that an annual service fee will charged as described in the RMA Fees section of the Master Account Agreement; 6. that I understand you will not supply my name to issuers of any securities held in my account so I will not receive information regarding those securities directly from the issuer, but rather will receive information from UBS PaineWebber instead, unless I notify you in writing otherwise; 7. that I have received and read a copy of the attached Master Account Agreement and agree to be bound by the terms and conditions contained therein (which terms and conditions are hereby incorporated by reference); 8. that I have supplied all of the information contained in this Account Application and I declare it as true and accurate and further agree to promptly notify UBS PaineWebber in writing of any material changes including those in my financial situation or investment objectives; 9. that I have read and understand the "Account Information" booklet which contains, among other things, UBS PaineWebber's Statement of Credit Practices describing interest charges, the Bill Payment and Electronic Funds Transfer Services Agreement, Instructions for W-9 Preparation, Selected Fees & Charges and other important information regarding my account and relationship with UBS PaineWebber, which booklet and terms and conditions are incorporated herein by reference; 10. that, if I elected the Electronic Funds Transfer Service as contained herein, I authorize (a) UBS PaineWebber and its processing institution (the "Processing Bank") to initiate the types of transactions indicated in the Description of the Electronic Funds Transfer Service section of the Account Information booklet, and adjustments for any entries made in error, to or from my account(s) as contained herein, and authorize the depository(ies) named on my bank account(s) or UBS PaineWebber to debit and/or credit the same to my bank account(s); (b) the Processing Bank and my bank to comply with any instructions regarding electronic fund transfers between this RMA, my bank account, and/or other accounts with UBS PaineWebber provided that such instructions are given to UBS PaineWebber with my PIN/Password and (c) UBS PaineWebber, the Processing Bank and my bank to make changes and/or cancellations requested by me.

I certify, as the "Client" signing below or in my representative capacity for the "Client" by signing below and under penalties of perjury that: (1) the taxpayer identification number set forth herein is my correct taxpayer identification number, and (2) I am not subject to backup withholding either because (a) I am exempt from backup withholding, or (b) I have not been notified by the IRS that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and (3) I am a U.S. person (including a U.S. resident alien). I understand that I must strike out item (2) above if I have been notified by the IRS that I am subject to backup withholding because of underreporting of interest or dividends on my tax return, unless after being so notified, I have received another notice from the IRS that I am no longer subject to backup withholding.
The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

X ~~[signature]~~    2/1/02
Signature                          Date

X _____
Additional Trustee/Party Signature    Date

This section applies to the MasterCard Debit Card and Check Writing only. If you want to authorize an additional check and/or MasterCard user, please complete and have that person sign below. The following additional ☐ Check User ☐ Card User (who is not a minor) is appointed my agent, unaffected by my subsequent disability or incompetence, to effect check writing/card transactions in my RMA.

X _____
Print Agent Name

X _____
Agent Signature                    Date

### For UBS PaineWebber Use Only

X ~~[signature]~~
Financial Advisor Approval / Date

X ~~[signature]~~    1/23/0
Temporary Approval / Date

Branch Manager Approval / Date

Is the FA registered in both the client's state of residence and mailing address?  ☑ Yes  ☐ No
What was the initial transaction for this account?  ☐ Buy  ☐ Sell  ☐ Deposit  ☑ Transfer of Accounts →
How was the account obtained?  ☐ Walk-In  ☐ Referral:_____
Interest/Dividends:  ☐ Monthly  ☐ Weekly  ☑ Hold in Account
Account Settles:  ☐ Assets in Account  ☐ Equity DVP  ☐ Government DVP  ☐ Transfer/Ship

☐ FT  ☐ JT  ☐ LG  ☐ ML  ☑ NA  ☐ RT  ☑ W9  ☐ NB (Trusts Only)

Sweep Fund:____  Bank Code:____  Plan Code:____  Assoc Code:____  Managed Account Code:____  Family of Account Code:____

| Initial Trade Information |
| --- |
| Security Name: |
| Security Symbol: ____ |
| Value: $____ |
| or |
| Shares: ____ |

UBS PaineWebber is a service mark of UBS AG. Resource Management Account, RMA, Business Services Account BSA and ResourceLine are registered service marks of UBS PaineWebber Inc. Platinum MasterCard and MasterCard are registered trademarks and service marks of MasterCard International Incorporated. ©2001 UBS PaineWebber Inc. All Rights Reserved. Member SIPC.

4          ©2001 UBS PaineWebber Inc. All Rights Reserved. Member SIPC.

UBS|PaineWebb

**Account Number:** ▓▓▓▓▓ 0059    **SS#/TIN:** ▓▓▓▓ 2081

## Account Ownership Information Addendum
Complete for each additional Trustee or Party

| Trustee/Party Name: | | | Social Security/Taxpayer ID #: |
|---|---|---|---|
| Street Address: | | | Home Telephone: |
| City: | State: | Zip: | Country of Citizenship: ☐ USA ☐ Other (specify):_____ |

| Trustee/Party Name: | | | Social Security/Taxpayer ID #: |
|---|---|---|---|
| Street Address: | | | Home Telephone: |
| City: | State: | Zip: | Country of Citizenship: ☐ USA ☐ Other (specify):_____ |

| Trustee/Party Name: | | | Social Security/Taxpayer ID #: |
|---|---|---|---|
| Street Address: | | | Home Telephone: |
| City: | State: | Zip: | Country of Citizenship: ☐ USA ☐ Other (specify):_____ |

## Duplicate Party Addendum
Complete for each Duplicate Party

| Check all that apply: ☐ Trade Confirmation Recipient ☐ Statement Recipient | Internal Location Code (UBS PaineWebber Use Only) | | |
|---|---|---|---|
| Name: | Country of Citizenship: ☐ USA ☐ Other (specify):_____ | | |
| Street Address: | City: | State: | Zip: |

| Check all that apply: ☐ Trade Confirmation Recipient ☐ Statement Recipient | Internal Location Code (UBS PaineWebber Use Only) | | |
|---|---|---|---|
| Name: | Country of Citizenship: ☐ USA ☐ Other (specify):_____ | | |
| Street Address: | City: | State: | Zip: |

©2001 UBS PaineWebber Inc. All Rights Reserved. Member SIPC.    5

# UBS|PaineWebber

SS#/TIN ▮▮▮▮▮▮  2081

## Electronic Funds Transfer Service Addendum

### Non-UBS PaineWebber Accounts

If you would like to use the Electronic Funds Transfer Service to move funds electronically, please complete the information below for your account(s) outside of PaineWebber.

| | AUTHORIZED OUTSIDE ACCOUNT #1 | AUTHORIZED OUTSIDE ACCOUNT #2 |
|---|---|---|
| Name of Financial Institution | | |
| ABA Routing Number | | |
| Account Title/Name | | |
| Account Number | | |
| Account Type | ☐ Savings  ☐ Checking | ☐ Savings  ☐ Checking |
| Financial Institution Address | Street Address: <br> City:  State:  Zip: | Street Address: <br> City:  State:  Zip: |
| Financial Institution Telephone | | |
| Permission (select all that apply) | ☐ Deposit to external account <br> ☐ Withdrawal from external account | ☐ Deposit to external account <br> ☐ Withdrawal from external account |
| For recurring transfers, complete the amount, frequency and time frames (leave blank for one-time transfers). | Recurring Amount: $ _____ <br> Frequency (select one): <br> ☐ Weekly  ☐ Bi-Weekly  ☐ Monthly <br> ☐ Quarterly  ☐ Semi-Annually  ☐ Annually <br> Start Date: ___/___/___ <br> End Date: ___/___/___ | Recurring Amount: $ _____ <br> Frequency (select one): <br> ☐ Weekly  ☐ Bi-Weekly  ☐ Monthly <br> ☐ Quarterly  ☐ Semi-Annually  ☐ Annually <br> Start Date: ___/___/___ <br> End Date: ___/___/___ |

### UBS PaineWebber Accounts

Please complete the information below for your other UBS PaineWebber accounts.

| | DESIGNATED INTERNAL ACCOUNT #1 | DESIGNATED INTERNAL ACCOUNT #2 |
|---|---|---|
| UBS PaineWebber Account # | | |
| Account Title/Name | | |
| Permission (select all that apply) | ☐ Deposit to external account <br> ☐ Withdrawal from account* | ☐ Deposit to external account <br> ☐ Withdrawal from account* |
| For recurring transfers, complete the amount, frequency and time frames (leave blank for one-time transfers). | Recurring Amount: $ _____ <br> Frequency (select one): <br> ☐ Weekly  ☐ Bi-Weekly  ☐ Monthly <br> ☐ Quarterly  ☐ Semi-Annually  ☐ Annually <br> Start Date: ___/___/___ <br> End Date: ___/___/___ | Recurring Amount: $ _____ <br> Frequency (select one): <br> ☐ Weekly  ☐ Bi-Weekly  ☐ Monthly <br> ☐ Quarterly  ☐ Semi-Annually  ☐ Annually <br> Start Date: ___/___/___ <br> End Date: ___/___/___ |

*Please note that Electronic Funds Transfer withdrawals can only be made from an RMA® or Business Services Account BSA®.

©2001 UBS PaineWebber Inc. All Rights Reserved. Member SIPC.

6

※ UBS | PaineWebber

Account Number : ████ 5059    SS#/TIN ████ 208

## Bill Payment Service Addendum

Complete this section only if you do not have online access. UBS PaineWebber's online services clients may set up Vendor/Payee information online.

| | VENDOR/PAYEE #1 | | | VENDOR/PAYEE #2 | | |
|---|---|---|---|---|---|---|
| Name of Vendor/Payee | | | | | | |
| Vendor/Payee Account Number | | | | | | |
| Vendor/Payee Address | Street Address: | | | Street Address: | | |
| | City: | State: | Zip: | City: | State: | Zip: |
| Vendor/Payee Telephone | | | | | | |
| For recurring transfers, complete the amount, frequency and time frames (leave blank for one-time transfers). | Recurring Amount: $ _____ <br> Frequency (select one): <br> ☐ Weekly  ☐ Bi-Weekly  ☐ Monthly <br> ☐ Quarterly  ☐ Semi-Annually  ☐ Annually <br> Start Date: ___/___/_____ <br> End Date: ___/___/_____ | | | Recurring Amount: $ _____ <br> Frequency (select one): <br> ☐ Weekly  ☐ Bi-Weekly  ☐ Monthly <br> ☐ Quarterly  ☐ Semi-Annually  ☐ Annually <br> Start Date: ___/___/_____ <br> End Date: ___/___/_____ | | |
| Expense Code* (optional) | | | | | | |

| | VENDOR/PAYEE #3 | | | VENDOR/PAYEE #4 | | |
|---|---|---|---|---|---|---|
| Name of Vendor/Payee | | | | | | |
| Vendor/Payee Account Number | | | | | | |
| Vendor/Payee Address | Street Address: | | | Street Address: | | |
| | City: | State: | Zip: | City: | State: | Zip: |
| Vendor/Payee Telephone | | | | | | |
| For recurring transfers, complete the amount, frequency and time frames (leave blank for one-time transfers). | Recurring Amount: $ _____ <br> Frequency (select one): <br> ☐ Weekly  ☐ Bi-Weekly  ☐ Monthly <br> ☐ Quarterly  ☐ Semi-Annually  ☐ Annually <br> Start Date: ___/___/_____ <br> End Date: ___/___/_____ | | | Recurring Amount: $ _____ <br> Frequency (select one): <br> ☐ Weekly  ☐ Bi-Weekly  ☐ Monthly <br> ☐ Quarterly  ☐ Semi-Annually  ☐ Annually <br> Start Date: ___/___/_____ <br> End Date: ___/___/_____ | | |
| Expense Code* (optional) | | | | | | |

* Please note that RMA® and Business Services Account BSA® offer an easy to use expense-coding system. Using pre-assigned letters, you may establish your own expenditure categories and track them either on your UBS PaineWebber check register or online. When writing checks and submitting bill payments, be sure to indicate your expense code. For your convenience, all checking and bill payment expense codes are totaled on your monthly premier statement.

©2001 UBS PaineWebber Inc. All Rights Reserved. Member SIPC.

UBS-EFRON  003767

**UBS|PaineWebber**

## Account Transfer Form

| UBS PaineWebber Account Number : | 0059 | SS#/TIN | 0081 |
|---|---|---|---|

| Branch Use Only | UBS PaineWebber Clearing Number: **0221** | Delivering Firm Clearing Number: 0443 | Custodian or Trustee of this UBS PaineWebber account. (If applicable) |
|---|---|---|---|

**1  Information About Your UBS PaineWebber Account**

Account Title: David Efron

Account to be transferred into a:
☐ Traditional IRA   ☐ Traditional IRA as a Rollover   ☐ QP   ☐ SEP IRA
☐ Roth IRA   ☐ Coverdell Education Savings Account   ☐ SIMPLE IRA   ☐ CODA SEP IRA

The account is transferring from a qualified retirement plan by means of a direct rollover into a*:
☐ Traditional IRA   ☐ SEP IRA   ☐ Rollover IRA   ☐ CODA SEP IRA
*Pursuant to IRS Regulations, qualified retirement plan assets cannot be rolled over to a SIMPLE IRA or Roth IRA.

**2  Information About the Account You are Transferring**

Please refer to your statement for the following information and attach a complete copy of your most recent statement for this account. Please complete a separate form for each account you transfer (photocopies are acceptable).

Name(s) and Title of Account shown on your statement: David Efron

Your Account Number: 7AL0.18190

Social Security Number on Account: 0081

Name of Firm/Fund Company: Doral Securities

Street Address of Firm/Fund Company: Hato Rey Tower

City: San Juan     State: PR     Zip: 00918

**3  Type of Transfer You Are Making**

Please answer questions A through D.

**A) Do you wish to transfer your entire account?**   ☑ Yes   ☐ No

If you answered "yes," skip to question B. If you answered "no" and the transfer is not coming directly from an insurance or mutual fund company, please provide the following information for the assets you intend to transfer.

**Partial Transfer**

| Description of Asset | Quantity (indicate # of shares or "All") | Description of Asset | Quantity (indicate # of shares or "All") |
|---|---|---|---|
| (1) | | (5) | |
| (2) | | (6) | |
| (3) | | (7) | |
| (4) | | (8) | |

**Annuity/Mutual Fund Transfer**

**B) Are you transferring directly from an insurance or mutual fund company?**   ☐ Yes   ☐ No

If you answered "no," skip to question C. If you answered "yes," please provide the following information for each annuity or mutual fund you intend to transfer. (Some assets are not transferable. If the asset is not transferable, UBS PaineWebber can be named broker-dealer and/or custodian at the company, or the assets can be sold. Requests to sell positions are dependent upon the delivering firm receiving and processing the request and may take several weeks to complete.  Liquidations can also be processed by calling the delivering firm.)

| Name of Fund/Annuity | Account Number | Quantity (indicate # of shares or "All") |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |

BMKT3249 (REV. 10/01)                    8                    CL-XFR 10/01

UBS-EFRON  003768

# UBS|PaineWebber.

| UBS PaineWebber Account Number : | ████████ 0059 | SS#/TIN : | ████████ 0081 |
|---|---|---|---|

## 3 Type of Transfer You Are Making *cont.*

### Bank, Savings & Loan or Credit Union Transfer

**C) Are you transferring directly from a Bank, Savings & Loan or Credit Union?** ☐ Yes ☐ No
If you answered "no," skip to question D. If you answered "yes", please complete the following section.

Initiate the transfer of a maturing Certificate of Deposit (CD) no more than two weeks prior to the maturity date. Otherwise, you may incur early withdrawal penalties.

| I am only transferring cash. Please transfer: | I have a CD that I want to transfer. Please: |
|---|---|
| ☐ All cash in account | ☐ Liquidate it **IMMEDIATELY**. I am aware of and acknowledge the penalty I will incur from any early withdrawal. |
| ☐ Only $_____ | ☐ Liquidate it **AT MATURITY**. Maturity date ___/___/____ (Please submit 2 weeks before maturity date.) |

### Liquidations

**D) Do you wish to liquidate any assets as part of this transfer?** ☐ Yes ☐ No
If you answered "yes," you must complete a Liquidation Letter, which is available from your UBS PaineWebber Financial Advisor or online.
Liquidations can also be processed by contacting the delivery firm.

## 4 Client Agreement

Please transfer the assets specified, to UBS PaineWebber Inc., which has been authorized by me to make payment to you of the debit balance or to receive payment of the credit balance in my securities account. I understand that to the extent any assets in my securities account are not readily transferable, with or without penalties, such assets may not be transferred within the time frame required by New York Stock Exchange Rule 412 or similar rule of the National Association of Securities Dealers or other designated examining authority.

Unless otherwise indicated in the instruction contained herein, I authorize you to liquidate any proprietary money market fund assets that are part of my securities account and transfer the resulting credit balance to UBS PaineWebber Inc. I understand that you and/or UBS PaineWebber will contact me with respect to the disposition of any other assets in my securities account that are either non-transferable or non-deliverable. If certificates or other instruments in my securities account are in your physical possession, I instruct you to transfer them in good deliverable form, including affixing any necessary tax waivers, to enable UBS PaineWebber Inc. to transfer them in its name for the purpose of sale, when and as directed by me. I further instruct you to cancel all open orders for my securities account on your books.

I affirm that I have destroyed or returned to you any credit/debit cards and unused checks given to me in connection with my securities account.

**Delivering Agents:** *Please refer to the attached page for delivery instructions.*

X_____
Signature

Date  21 / 01 / 02

X_____
Joint Account Holder/Authorized Individual's Signature

Date

---

### For UBS PaineWebber Branch Use Only

**Liquidations**
1. Check with the client to determine if any assets require liquidation.
2. If liquidations are requested, ask the client to contact the branch operations manager at previous firm with verbal instructions or send the Liquidation Letter (BMKT3423) to the same person. Verbal instructions generally result in fewer delays in the transfer process. PLEASE DO NOT SEND LIQUIDATION INSTRUCTIONS TO THE ACCOUNT TRANSFER DEPT. Always follow-up the next day to ensure receipt and execution of liquidation request.

**ACAT versus Non-ACAT** --- The transfer is an ACAT transfer if both of the following conditions are met: the entire account is to be transferred and the delivering firm is ACAT-eligible. To find out if the firm is ACAT-eligible, call 877-PWSERVE, option 4.
Account is transferring via: ☐ ACAT ☐ Non-ACAT. If ACAT or Non-ACAT, the branch should process the transfer and retain the paperwork.

**All Account Transfer procedures are available on InfoNet by accessing Operations Support/Account Transfer/Procedures.**

**Authorization (UBS PaineWebber completes).**
To the prior trustee or custodian: Please be advised that UBS PaineWebber will accept the above-captioned account as successor custodian.

| Successor Custodian/Trustee Authorized Signature: | Date: |
|---|---|
| X_____ | |

UBS-EFRON 003769

# UBS|PaineWebber.

Tax Identification No. 13-2638166

Delivery Instructions: All deliveries must include client name and UBS PaineWebber account number.

| | |
|---|---|
| All DTC-Eligible Securities | Deliver to DTC Clearing 0221. All securities must have client name and UBS PaineWebber account number. |
| Dividend Reinvestment/Closed-end Mutual Funds | Issue a certificate for all whole shares, liquidate all fractional shares and discontinue dividend reinvestment. All deliveries must include client name and UBS PaineWebber account number. |
| Physical Delivery of Securities | Physical Securities Window<br>UBS PaineWebber<br>499 Washington Bld - 11th Floor<br>Jersey City NJ 07310 |
| Retail Transfer of Federal Funds | Bank of New York<br>ABA #021000018<br>UBS PAINEWEBBER RETAIL<br>A/C 8900114096<br>F/C UBS PAINEWEBBER CLIENT A/C NAME<br>A/C UBS PAINEWEBBER INTERNAL A/C NUMBER |
| U.S. Government/Fed Book Entry Securities | ABA 021000021<br>CHASE NYC/PAINE/CLIENT A/C # & NAME |
| Forward Checks | UBS PaineWebber Incorporated<br>1000 Harbor Blvd.,<br>Weehawken, NJ 07086<br>Attn: Central Check Deposit, 7th Floor<br>All checks must include client name and account number |
| For All Other Correspondence | UBS PaineWebber Incorporated<br>499 Washington Blvd.,<br>Jersey City, NJ 07310<br>Attn: Account Transfer, 14th Floor |

UBS-FERON_003770

UBS PaineWebber

| | Account Number : | 0 0 5 4 | SS#/TIN | 0 0 8 1 |
| --- | --- | --- | --- | --- |

**Resource Management Account ® (RMA®) Direct Deposit Application**

In order to sign-up for RMA Direct Deposit, you must have either your RMA checks or a UBS PaineWebber account number, which will be provided when your account is opened. This form contains important information you will need to initiate Direct Deposit. Please keep this form until you receive your UBS PaineWebber account number.

To arrange to have your Social Security checks directly deposited into your RMA, call the Social Security Administration at 800-772-1213. For other government payments, contact the issuing government agency directly. For all other organizations, use the form below.

| Name: |
| --- |
| Street: |

| City: | State: | Zip: |
| --- | --- | --- |

| Bank Name: | Bank Transit (or Routing) Number: |
| --- | --- |
| **BankOne, Columbus Ohio** | **0440-00804** |
| Bank Street Address: | Type of Account: |
| **800 Brooksedge Blvd., Dept. 0H1-0465** | **Checking** |

| Bank City: | State: | Zip: |
| --- | --- | --- |
| **Columbus** | **OH** | **43271-0465** |

If your RMA has the checking feature, you must enter your checking account number in the boxes below. This is a 10-digit number that begins with 8 and appears after the bank transit number 044000804 on the bottom of your RMA checks.

| 8 | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

If your RMA does not have the checking feature, you must enter in your alphanumeric UBS PaineWebber account number in the boxes below.

| 9 | 0 | 8 | 3 | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

I authorize you to deposit_____% of my check automatically into the financial institution account named above. Please Note: This must be done by electronic funds transfer.

X_____          _____
Signature                                                                              Date

Please detach and forward this completed form to the employer/organization sending the direct deposit.

## DO NOT SEND THIS PART OF THE APPLICATION TO UBS PAINEWEBBER

©2001 UBS PaineWebber Inc. All Rights Reserved. Member SIPC.          11

UBS-EFRON 003771

# ❖ UBS|PaineWebber

## MASTER ACCOUNT AGREEMENT

### Introduction

This agreement ("Agreement") contains the terms and conditions governing Client's UBS PaineWebber℠ Account (the "Account"). Terms used in this Agreement shall be defined as follows:

• "Application" means this Agreement and the application form entitled "Account Application and Agreement for Individuals, their Estates, Trusts and Custodial Accounts" signed by Client and containing Client's acknowledgement of receipt and review of this Agreement.

• "Card Issuer" means the issuer of Platinum MasterCard® appointed by UBS PaineWebber from time to time.

• "Cashfund" means UBS PaineWebber Cashfund, Inc. as more fully described in the prospectus of UBS PaineWebber Cashfund, Inc.

• "Check Provider" means, as applicable, the provider or processor of RMA® checks appointed by UBS PaineWebber from time to time.

• "Client" means each person, entity, trust or estate designated on the Application as the "Sole Owner/Minor/Primary Account Holder/Individual/Trust/Estate" or "Joint Account Holder/Parent/Guardian/Committeemen/Conservator/Trustee/Executor/Administrator".

• "Disclosure Documents" collectively refers to the booklet entitled "Account Information" (hereinafter referred to as the "Account Information" booklet), the prospectuses of the Funds, the Cashfund prospectus and the offering documentation for the Other Sweep Options.

• "Funds" means one or more of the RMA money market funds as more fully described in the prospectus of the UBS PaineWebber RMA Funds.

• "Other Sweep Options" means such other applicable sweep investment options as may be offered from time to time.

• "UBS PaineWebber" means UBS PaineWebber Inc., its successor firms, subsidiaries, correspondents and/or affiliates, including without limitation, its parent company, UBS AG, and all its subsidiaries and affiliates.

• "Property" includes, but is not limited to, securities, money, stocks, options, bonds, notes, futures contracts, commodities, commercial paper, certificates of deposit and other obligations, contracts, all other property usually and customarily dealt in by brokerage firms and any other property that can be recorded in any of Client's accounts with UBS PaineWebber.

• "Retirement Money Fund" means the UBS PaineWebber Retirement Money Fund, as more fully described in the prospectus of the UBS PaineWebber Retirement Money Fund.

• "RMA" means Resource Management Account®. RMA's features are more fully described in the "Account Information." booklet.

• "Securities Intermediary" means: 1) a clearing corporation; or 2) a person, including a bank or broker, that in the ordinary course of business maintains securities accounts for others and is acting in that capacity, as such terms are interpreted under Section 8-102(a)(14) of the Uniform Commercial Code, as in effect in the State of New York from time to time ("UCC").

## BASIC INVESTMENT ACCOUNT AGREEMENT

### Authorization

If Client did not choose any RMA features on the Application, Client hereby requests that UBS PaineWebber open a Basic Investment Account in Client's name. Client understands that the request to open the Account is subject to the receipt of a signed Application and the approval of UBS PaineWebber. Client will automatically be considered for margin unless Client has indicated on the Application Client's election not to be considered for margin. UBS PaineWebber may at any time, with or without cause, in its sole discretion, terminate this Agreement and deliver any Property held in the Account to Client, subject to UBS PaineWebber's rights as described below under "Liquidation of Collateral or Account."

If a money market fund sweep feature or Other Sweep Option is selected for this Account, UBS PaineWebber is authorized to invest or "sweep" available credit balances, for which no interest is otherwise earned or paid, in the Account into the applicable money market fund or Other Sweep Option and subsequently liquidate any such money market fund shares or Other Sweep Option interests so purchased at such times, and for such periods of time, as UBS PaineWebber may decide in its sole discretion. If Cashfund is selected for the Account, Client must open Client's fund account with an initial investment of $1,000 or more. Once Client's fund account is opened, all free cash credit balances (that is, immediately available funds) of $500 or more in the Account (including proceeds from securities Client has sold) are automatically invested in the fund on a daily basis. These purchases are made daily for settlement the next business day. All remaining free credit cash balances of $1 or more are invested in fund shares on the next to last business day of each month for settlement on the last business day of that month. Such sweeps shall be made pursuant to UBS PaineWebber's then applicable policies and procedures, which may be amended from time to time, and are subject to the terms of the prospectus for the applicable money market fund or Other Sweep Option, which may also be amended from time to time. Prior to any sweep into a money market fund or Other Sweep Option, UBS PaineWebber may receive certain benefits in connection with any credit balances to which Client will not be entitled. If Client does not elect a sweep feature, there will be no automatic sweep from the Account and credit balances will not earn an investment return. Client acknowledges that Client has received and read the Disclosure Documents.

This authorization shall remain in full force and effect until a reasonable time following the receipt by UBS PaineWebber of written notice of revocation.

## RESOURCE MANAGEMENT ACCOUNT AGREEMENT

### Authorization

If Client selects a Resource Management Account (RMA) on the Application, Client thereby requests UBS PaineWebber to provide the selected RMA features to this Account. Trust account clients may opt for the Personal Trust Account (PTA) which is an RMA for trust accounts and hereafter deemed included in references to "RMA". Client understands and agrees that if Client currently has an account with UBS PaineWebber it will be converted into an RMA, if such RMA features or services are selected for this account and Client is eligible for one or more of such features or services. Client authorizes UBS PaineWebber to redeem automatically any shares of Cashfund, the Retirement Money Fund and any other money market fund or similar mutual fund shares Client holds in the account and to invest the proceeds as provided in the section of this Agreement entitled "Money Market Funds and Other Sweep Options" below.

Client understands and agrees that Client's request to open an RMA is subject to approval by UBS PaineWebber in its sole discretion. If approved, UBS PaineWebber will open Client's RMA after receipt by UBS PaineWebber of a signed Application and, if applicable, a completed section for checks and Platinum MasterCard and/or margin if Client selected such features. Certain of the services may be subject to limitations on their availability as required by law, regulation, rule or UBS PaineWebber's policies. Client will automatically be considered for margin unless Client has indicated on the Application their election not to be considered for margin. By signing the Application, Client acknowledges that Client has received and read the Disclosure Documents.

Client's authorization shall remain in full force and effect until a reasonable time following the receipt by UBS PaineWebber of written notice of revocation.

### Money Market Funds and Other Sweep Options

Client agrees and authorizes UBS PaineWebber to invest all credit balances in Client's RMA into the Funds or Other Sweep Options indicated on the Application which Client has chosen (hereafter referred to as "Primary Sweep Option"). If Client does not select a Primary Sweep Option, Client authorizes UBS PaineWebber to invest all credit balances into the RMA Money Market Portfolio.

Additionally, Client authorizes UBS PaineWebber to make withdrawals in accordance with the terms of the Disclosure

Documents. Client agrees that UBS PaineWebber has the right to withhold any redemption or liquidation proceeds or other payments from Client's RMA until all funds placed on account in Client's RMA have been collected. The collection periods are set forth in the Disclosure Documents.

Client acknowledges that UBS PaineWebber may delay acting on Client's instructions or effecting payments until Client's Account contains funds sufficient to meet Client's obligations.

### Check Writing Privilege

If Client selects the check writing feature on the Application, Client may write checks or authorize drafts against an RMA checking account serviced by the Check Provider. Client may use these checks only in conjunction with Client's RMA and only up to amounts within the Account's "Withdrawal Limit" as defined in the Disclosure Documents. Client authorizes UBS PaineWebber to reimburse the Check Provider in federal funds when checks or drafts are presented to the Check Provider and to automatically debit Client's RMA on the day of payment to the Check Provider. Client agrees to have sufficient assets in Client's RMA on the day UBS PaineWebber receives notification for payment from the Check Provider of payment of a check as well as on the day Client writes the check. Client understands that the checks may be used in the same manner and are subject to the normal procedures, rules and regulations as regular checks payable at the Check Provider. Client hereby authorizes the Check Provider to honor checks (a) bearing a signature with an approved first name, a middle initial or a name deleted or added if the Check Provider otherwise reasonably believes the signature to be authorized and (b) bearing only one signature unless Client instructs the Check Provider in writing that multiple signatures are required. Further, Client authorizes the Check Provider to honor unsigned drafts presented by third parties based on a signed separate written authorization from Client to any such third party.

### Platinum MasterCard(s)

If Client selects a Platinum MasterCard ("Card") on the Application, Client must also apply to the Card Issuer in order to receive the Card. Cards are not permitted where the Client is an estate, trust, custodial or individual retirement account. If approved for a Card, Client authorizes UBS PaineWebber and the Card Issuer to effect Card transactions in the manner described in the Disclosure Documents.

Client understands that the Card is a debit card and will allow Card transactions to the "Withdrawal Limit" (as described in the Disclosure Documents). Client agrees to have sufficient available assets to make payment in full for Card transactions as they become available and understands that if sufficient assets are not available to cover Card transactions, the Card Issuer may suspend and then cancel Client's Card. Client agrees that the use of any Card in connection with Client's RMA will also be governed by the terms and conditions contained in the Cardholder Agreement set forth in the "Account Information booklet".

By accepting a Card, Client agrees that Client will not dispose of Client's assets in Client's RMA or any other account Client may have with UBS PaineWebber, if such disposal will negatively affect Client's ability to pay for Card transactions. Client understands and agrees that UBS PaineWebber has the right to apply assets in any of Client's accounts with UBS PaineWebber to pay debts incurred on Client's Card or to pursue any other assets of Client to pay debts incurred on Client's Card.

### Limitations

Client agrees that Cards or checks issued in connection with Client's RMA cannot be used to purchase securities or any other products or services available through UBS PaineWebber. Client further understands and agrees that UBS PaineWebber may request and the Card Issuer and Check Provider may provide UBS PaineWebber with copies of checks and/or Card and bill payment drafts processed from Client's RMA.

### RMA Fees

Card will pay UBS PaineWebber an annual service fee. Client understands that the annual fee for Client's RMA is $125. The annual service fee and any other fees are subject to change by UBS PaineWebber at any time. Client will also pay UBS PaineWebber brokerage fees for all securities transactions.

UBS-EFRON_ 003772

Client will pay the Check Provider and/or UBS PaineWebber customary fees for check orders, specially imprinted checks, stop payment orders, copies of checks more than one month old, checks returned for insufficient funds and the fees associated with the Bill Payment Service and Electronic Funds Transfer Service, if applicable. Client authorizes UBS PaineWebber to charge the annual service fee and to charge Client's RMA for all other fees owed by Client.

UBS PaineWebber reserves the right to begin to impose charges for utilization of RMA features beyond the annual fee at any future date.

**Payments**

Client authorizes UBS PaineWebber to pay from the Withdrawal Limit in Client's RMA all debts incurred by Client to UBS PaineWebber, the Card Issuer or the Check Provider in connection with RMA services as set forth in the "Payments" section of the Account Information booklet. Debts include, but are not limited to, the amounts Client owes to UBS PaineWebber for securities purchases, RMA Account fees, drafts, fees for federal fund wires, customary transactional and brokerage fees as well as interest Client may owe UBS PaineWebber as a result of margin calls and/or loans in any of Client's accounts with UBS PaineWebber. Debts also include any Card transactions, Bill Payment Service transaction debits, Electronic Funds Transfers, drafts or check charges, or any other means by which Client authorizes a third party to debit any of Client's accounts with UBS PaineWebber (in the case of the Card Issuer or Check Provider limited, however, to the amount of the Withdrawal Limit). This is in addition to, and not in any way limiting, any other rights UBS PaineWebber may have, including without limitation, under the heading "Security Interest" of the General Terms and Conditions hereof.

**MARGIN AGREEMENT**

**Authorization**

Client will automatically be considered for margin unless Client has indicated on the Application that Client does not wish to be considered for margin. For Managed Account programs, margin is not permitted unless expressly approved by UBS PaineWebber. Client acknowledges that UBS PaineWebber will receive increased compensation in connection with the Account from Client's use of margin borrowing. In return for UBS PaineWebber's extension or maintenance of credit in connection with this Account, Client acknowledges that UBS PaineWebber and its successors and assignees are authorized in the usual course of business to lend, re-lend, hypothecate, pledge or re-pledge separately or together with property of others, either to UBS PaineWebber or to others, any Property which UBS PaineWebber may carry for Client on margin or until such time as payment is received for any such Property. In certain circumstances, such loans, may limit, in whole or in part, Client's ability to exercise voting rights of the securities lent. In connection with such loans, and in connection with securities loans made to Client in connection with short sales, UBS PaineWebber is authorized to receive and retain certain benefits (including, but not limited to, interest on collateral posted for such loans) to which Client will not be entitled. Client's authorization of a margin feature shall remain in full force until UBS PaineWebber receives written notice of revocation.

**Margin Requirements**

Client agrees to maintain in the Account such positions and margin as required by all applicable statutes, rules, regulations, procedures and customs or as UBS PaineWebber deems necessary or advisable, and where applicable, to satisfy any and all margin calls issued in connection with the Account.

**Risk**

Client understands that there are substantial risks involved in trading securities on margin, especially in periods of market volatility. When Client buys on margin, losses can increase significantly just as gains can increase. A decline in the value of the securities securing your margin loan may require Client to deposit additional funds into the Account. Unlike a cash trade, when a trade is done on margin, losses can exceed the amount of capital Client committed to the trade. If Client fails to promptly meet a margin call, and under certain other circumstances, UBS PaineWebber can, among other things, force the sale of securities in the Account without notifying Client, and Client may have to sell the securities at unfavorable prices.

For small transactions, the costs involved in utilizing margin may outweigh any benefit to Client. Please review carefully the disclosure document entitled "Loan Disclosure Statement—Risk Factors You Should Consider Before Using Margin or Other Loans Secured by Your Securities Accounts" included with the Application for a detailed discussion of the risks involved with the use of margin.

**Liquidation and Covering Positions**

UBS PaineWebber shall have the right, at any time and without prior notice, to satisfy a margin call or to obtain full payment of the margin loan, all without demand for margin or additional margin, other notice of sale or purchase, or other notice of advertisement. To satisfy a margin call or to obtain full payment of the margin loan, UBS PaineWebber shall have the right in accordance with UBS PaineWebber's general policies regarding UBS PaineWebber's margin maintenance requirements then in existence (or, if in its discretion UBS PaineWebber considers it necessary for Client's or UBS PaineWebber's protection; or, in the event a petition in bankruptcy, or for the appointment of a receiver, is filed by or against Client, or an attachment is levied against any account with UBS PaineWebber or in the event of Client's death or dissolution) to (i) require additional collateral, (ii) sell any or all Property in any of Client's accounts with UBS PaineWebber, whether carried individually or jointly with others, (iii) buy any or all Property which may be held short in the Account, (iv) cancel any open orders and close any or all outstanding contracts or (v) liquidate any of Client's accounts with UBS PaineWebber. Any such sales or purchases may be made at UBS PaineWebber's discretion on any exchange or other market where such business is usually transacted, or at public auction or private sale, and UBS PaineWebber may be the purchaser for UBS PaineWebber's own account. UBS PaineWebber shall not be responsible for losses incurred by Client if UBS PaineWebber sells Client's Property or positions, irrespective of whether or not UBS PaineWebber notifies Client of a margin call giving rise to such sale. UBS PaineWebber may at any time, and in its sole discretion, subject to applicable rules and regulations, amend the requirements applicable to Client's margin account, including changing the level of credit available to Client and applicable maintenance requirements. It is understood that a prior demand, or call, or prior notice of the time and place of such sale or purchase shall not be considered a waiver of UBS PaineWebber's right to sell or buy without demand or notice as herein provided. In addition, as set forth in "Liquidation of Collateral or Account" below, UBS PaineWebber may satisfy any and all amounts that Client owes in connection with the Account from any or all Property held in the Account or in any other account Client may have with UBS PaineWebber.

**AGREEMENT FOR JOINT ACCOUNTS**

The form of ownership selected for your Account may have significant legal consequences. Any references to a particular form of joint ownership contained in the Application or other Account documentation are for convenience only and Client should not rely on the reference as meaning such form of ownership is recognized in a particular state or otherwise appropriate for Client.

If Client needs information about what form of ownership is appropriate for Client, Client should consult Client's tax or legal advisor. UBS PaineWebber and its employees do not give tax or legal advice. If the Application includes an election for a Joint Account, Client requests and instructs UBS PaineWebber to open an account (the "Joint Account") on UBS PaineWebber's books for the purchase and sale of stocks, bonds, options and other securities, evidences of indebtedness and commodities. Notwithstanding the particular form of joint ownership elected by Client on the Application, Client understands and agrees that UBS PaineWebber shall treat such Joint Account as being the sole property of Client, Client's interests in it being as a joint tenant and not as a tenant in common so that on the death of any Client the survivor(s) will be the sole owner(s) of whatever monies and Property may remain to the credit of the Joint Account. Client agrees that any and all controversies which may arise between Client and UBS PaineWebber are subject to the arbitration and governing law clauses contained herein. See "Applicable Law" and "Arbitration" below.

Any individual Client who is a Joint Account holder has full power and authority to make purchases and sales, including short sales (if the Client has authorized margin), to withdraw any and all Property from, or to do anything else

in reference to the Joint Account, either individually or in Clients' joint names, and UBS PaineWebber, the Card Issuer and the Check Provider are authorized and directed to act upon instructions received from any individual Client and to accept payment and securities from any individual Client for the credit of the Joint Account. In consideration of UBS PaineWebber carrying a Joint Account on margin or otherwise, each Client agrees to be jointly and severally liable for the Joint Account and in connection with any transaction in the Joint Account and to pay on demand any debit balance or losses at any time due in the Joint Account. UBS PaineWebber may make checks payable to and deliver Property registered in the names of all parties to the Joint Account jointly, unless UBS PaineWebber receives written authorization to the contrary from all parties on the Joint Account. Any and all notices, communications, or any demands for margin calls sent to any individual Client shall be binding upon all, and may be given by mail or other means of communication. UBS PaineWebber, in its sole discretion, may at any time demand payment on any debit balance or losses, irrespective of when due, in the Joint Account, suspend all activity in the Joint Account pending instructions from a court of competent jurisdiction or require that instructions pertaining to the Joint Account or the property therein be in writing signed by both or all Clients. The individual authority of each individual Client to act in connection with the Joint Account shall continue until a reasonable time after UBS PaineWebber receives written notice from any individual Client closing the Joint Account.

Each Client agrees to indemnify and hold UBS PaineWebber, Cashfund, the Primary Sweep Option or the RMA Money Market Portfolio, as applicable, and the Card Issuer and Check Provider harmless from and against any losses, causes of action, damages and expenses arising from or as a result of UBS PaineWebber or the Card Issuer or Check Provider following the instructions of any of the Clients.

**GENERAL TERMS AND CONDITIONS**

**Client Representation**

The individual(s) signing the Application represent(s) to have reached the age of majority according to the laws of the state of Client's residence and according to the laws of the State of New York or if the individual(s) is signing on behalf of an organization, he/she/it has the authority to execute this Agreement. Client represents that it is duly authorized to conduct business in the jurisdiction from which it transacts business. Client agrees to abide by UBS PaineWebber's policies, and the Rules and Regulations as set forth below. Client will notify UBS PaineWebber promptly if Client is or becomes employed by any of the following: any exchange or any corporation of which any exchange owns a majority of the capital stock; any member or firm registered on any exchange; any bank, trust company, insurance company; or any company or individual dealing, either as broker or principal, in stocks, bonds or any other securities, commodities, commercial paper or other financial instruments or assets. Except as provided for, or disclosed, in this Agreement, no one other than Client has or will have an interest in the Account unless and until UBS PaineWebber is notified in writing by Client, and under such circumstances until UBS PaineWebber agrees to continue to carry the Account. Client understands that UBS PaineWebber is prohibited under the National Association of Securities Dealers' (NASD) Free Riding and Withholding Interpretation from selling securities in certain public offerings to persons restricted by such rules. Unless Client has so described on the Application, Client is not presently so restricted, and if Client is or becomes so restricted, Client agrees to notify UBS PaineWebber promptly. Client (or where Client is not a natural person, each of the individual(s) signing the Application) represents that he, she or it has and will have all necessary licenses, authorizations, consents, approvals (and if Client is not an individual, powers in its authorization papers) to enable Client to effect all transactions in investments under the Terms and Conditions of this Agreement. The individual(s) signing the Application further represents and warrants that if Client is a custodian, conservator, guardian, executor or trustee, each of such individuals or entities signing on behalf of Client have the authority to open this Account on behalf of Client and to conduct transactions, including transactions involving the remittance or withdrawal of cash or other Property to or from an account, on behalf of Client according to Client's direction.

13

Subject to any applicable financial privacy laws and regulations, Client understands and agrees that data regarding Client and the Account may be shared with UBS PaineWebber's affiliates. Further, subject to any applicable financial privacy laws and regulations, Client requests that UBS PaineWebber share such personal financial data with the Card Issuer and Check Provider and other non-affiliates of UBS PaineWebber as is necessary or advisable to effect, administer or enforce, or to service, process or maintain, all transactions and accounts contemplated by this Agreement.

Client authorizes UBS PaineWebber to obtain a credit report or other credit references concerning Client (including, without limitation, making verbal or written inquiries concerning Client's credit history) or to otherwise verify or update credit information given to UBS PaineWebber at any time. Client authorizes the release of this credit report or other credit information to the Card Issuer and Check Provider or to UBS PaineWebber affiliates as it deems necessary or advisable to effect, administer or enforce, or to service, process or maintain all transactions and accounts contemplated by this Agreement, and for the purpose of offering additional products, from time to time, to Client. Client authorizes UBS PaineWebber to exchange Client information with any party it reasonably believes is conducting a legitimate credit inquiry in accordance with the Fair Credit Reporting Act. UBS PaineWebber may also share credit or other transactional experience with Client's designated Financial Advisor or other parties designated by Client.

**Special Accounts-for use by custodian accounts, conservatorships/guardianships, estates and trusts.**
Each of the signatories to the Application represents and warrants that they have the necessary power and authority to open the Account being opened pursuant thereto on behalf of the named individual or entity, and to place in such Account and to use the assets of such Account according to their discretion.

**For Trusts and Custodial Accounts**
If Client is acting as executor, trustee, conservator, guardian or custodian, Client understands that it is a fiduciary on behalf of the beneficial owners of the Account and that Client has a fiduciary duty to use the services provided through the Account and related services and features for the benefit of his or her beneficial owners of the Account and not for his or her own benefit. Client acknowledges that he or she has made an independent determination that Account activity is suitable and appropriate for the beneficial owners of such Account. Client understands and agrees that this determination is solely the responsibility of Client and not UBS PaineWebber.

**Rules and Regulations**
All transactions in the Account shall be subject to the constitution, rules, regulations and custom and usage of the exchange or market and its clearing agency, if any, on which such transactions are executed by UBS PaineWebber or UBS PaineWebber's agents, including UBS PaineWebber's subsidiaries and affiliates. Such transactions are also subject, where applicable, to the provisions, rules and regulations of the Securities and Exchange Commission, the Commodity Futures Trading Commission, and the Board of Governors of the Federal Reserve System in existence at this time and as later amended and supplemented. Client acknowledges that UBS PaineWebber is subject to examination by various federal, state and self-regulatory organizations and that books and records maintained by UBS PaineWebber are subject to inspection and subpoena by these regulators and by federal, state, and local law enforcement officials. Client also acknowledges that such regulators and officials may, pursuant to treaty or other arrangements, in turn disclose such information to the officials or regulators of other countries, and that U.S. courts may be required to compel UBS PaineWebber to disclose such information to the officials or regulators of other countries. Client agrees that UBS PaineWebber may disclose to such regulators and officials information about Client and transactions in the Account without notice to Client. In addition, UBS PaineWebber may in the context of a private dispute be required by subpoena or other judicial process to disclose information or produce documentation related to Client, the Account or other accounts at UBS PaineWebber. Client acknowledges and agrees that UBS PaineWebber reserves the right, in its sole discretion, to respond to subpoenas and judicial process as it deems appropriate.

**Anti-Money Laundering**
UBS PaineWebber is firmly committed to compliance with all applicable laws, rules and regulations, including those related to combating money laundering. Client understands and agrees that Client must take all necessary steps to comply with the anti-money laundering laws, rules and regulations of Client's country of origin, country of residence and the situs of Client's transaction.

**Liability**
Client acknowledges and agrees that Client will be personally liable for any fees or other obligations accruing to UBS PaineWebber under this Agreement and Client hereby agrees to indemnify UBS PaineWebber, Cashfund, the Other Sweep Options or the Funds as applicable, and the Card Issuer and the Check Provider against any losses arising from (a) any and all Account transactions effected or incurred by any person authorized to effect such transactions, including without limitation redemption of any shares of Funds, Other Sweep Options or Cashfund and any other money market fund and similar fund shares, deposits and withdrawals of funds from the Primary Sweep Option, use of the check writing privilege (including unsigned drafts presented by third parties), security transactions, Card transactions, Bill Payment Services and Electronic Funds Transfer Service transactions and (b) any debits, charges, fees or other obligations in the Account.

Client shall at all times be liable for the payment of any amounts advanced, any debit balances or other obligations owing in the Account and Client shall be liable to UBS PaineWebber for any deficiency remaining in the Account in the event of liquidation thereof, in whole or in part, by either Client or UBS PaineWebber. Additionally, Client agrees to be liable to UBS PaineWebber for any accrued interest on any such amounts at UBS PaineWebber's then customary rate, if applicable, or otherwise the maximum rate allowable by law. Client further agrees to indemnify UBS PaineWebber against any loss, cost, expense, liability or damages arising out of Client's obligations hereunder. Client will be liable for the reasonable costs and expenses of collection (including attorney's fees), for any unpaid losses, fees or other amounts owed by Client to UBS PaineWebber or against which Client has indemnified UBS PaineWebber under the preceding sentence. Client shall be liable for any and all losses, claims, damages, penalties, fines, settlements, costs, causes of action, debts, dues, sums of money, accounts, accountings, reckonings, acts, omissions, demands, obligations, actions, suits, proceedings, judgments, liabilities and expenses (including without limitation all expenses of litigation or preparation therefor, whether or not UBS PaineWebber is a party thereto) which UBS PaineWebber may pay or incur arising out of any claims by any person or entity in any way relating to this Account. Neither UBS PaineWebber nor its officers, directors, employees or agents shall under any circumstances or for any reason have any liability to Client for any consequential damages arising out of this Agreement and/or any services provided pursuant to this Agreement. Client and, in the case of a Joint Account, each individual Client) agrees that, in the event of the death of any Client, the survivor(s) or the estate shall immediately give UBS PaineWebber written notice thereof, and UBS PaineWebber may, before or after receiving such notice, take such actions, require such papers, inheritance or estate tax waivers or federal transfer certificates, retain such portion of the Account or any other account Client may have with UBS PaineWebber and restrict transactions in the Account as UBS PaineWebber may deem advisable to protect UBS PaineWebber against any tax, liability, penalty or loss under any present or future laws or otherwise. Client's estate and the Account shall be jointly liable for all costs (including reasonable attorney's fees and costs) UBS PaineWebber and/or the Card Issuer and the Check Provider may incur in connection with the disposition of the Account and related assets and liabilities in the event of Client's death, disability or dissolution.

UBS PaineWebber and/or the Card Issuer and the Check Provider shall be entitled to recover from a Joint Account or from any Client prior to any distribution of Property such costs as it may incur, including reasonable attorney's fees, as a result of any dispute between the Clients relating to or arising from a Joint Account or occasioned by the death of one or more Clients holding a Joint Account.

The estate of any Client holding a Joint Account who shall have died shall be liable and the survivor shall continue to be liable, jointly and severally, to UBS PaineWebber and/or

the Card Issuer and/or the Check Provider for any net debit balance or loss in the Joint Account in any way resulting from the completion of the transactions initiated prior to receipt, by UBS PaineWebber, of the written notice of the death of the decedent, or incurred in the liquidation of the Joint Account or the adjustment of the interests of the respective parties. The estate of the decedent and the survivor shall hereby jointly and severally agree to fully indemnify and hold harmless UBS PaineWebber and the Card Issuer and the Check Provider from any liability for any taxes which may be owed in connection therewith or any claims by third parties.

If the Account is maintained with rights of survivorship, in the event of the death of either or any Client, all assets in the Account shall pass to and be vested in the survivor(s) on the same terms and conditions as previously held, without in any manner releasing the decedent's estate from the liabilities herein.

**Security Interest**
As security for the payment of all liabilities or indebtedness presently outstanding or to be incurred under this or any other agreement between UBS PaineWebber and Client, Client grants UBS PaineWebber a security interest in any and all Property belonging to Client or in which Client may have any legal, equitable or other interest held by UBS PaineWebber or carried in any of Client's accounts with UBS PaineWebber. All Property shall be subject to such security interest as collateral for the discharge of Client's obligations to UBS PaineWebber, wherever or however arising and without regard to whether or not UBS PaineWebber made loans with respect to such Property. In enforcing UBS PaineWebber's security interest, UBS PaineWebber shall have the discretion to determine the amount, order and manner of Property to be sold and shall have all the rights and remedies available to a secured party under the UCC. Without UBS PaineWebber's prior written consent, Client will not cause or allow any of the Property held in any of Client's accounts with UBS PaineWebber, whether now owned or hereafter acquired, to be or become subject to any liens, security interests, mortgages or encumbrances of any nature other than UBS PaineWebber's security interest therein.

**Liquidation of Collateral or Account**
UBS PaineWebber may satisfy any and all amounts that Client owes UBS PaineWebber in connection with the Account from Property held by UBS PaineWebber or carried in any of Client's accounts with UBS PaineWebber. Additionally, UBS PaineWebber may sell any or all Property held in any of Client's accounts with UBS PaineWebber and cancel any open orders for the purchase or sale of any Property without notice in the event of Client's death or dissolution or whenever in UBS PaineWebber's discretion UBS PaineWebber considers it necessary for its protection. In such events UBS PaineWebber also may borrow or buy-in all Property held in any of Client's accounts with UBS PaineWebber required to make delivery against any sale effected for Client. Such sale or purchase may be public or private and may be made without advertising or notice to Client and in such a manner as UBS PaineWebber may in its discretion determine. No demands, calls, tenders or notices by UBS PaineWebber shall invalidate this waiver by Client. At any such sale UBS PaineWebber may purchase the Property free of any right of redemption and Client shall be liable for any remaining deficiency in any of Client's accounts with UBS PaineWebber, plus any accrued interest on such deficiency at UBS PaineWebber's then customary rate, if applicable, or, if not applicable, the maximum rate allowable by law. UBS PaineWebber shall not be liable to Client in any way for any adverse tax consequences resulting from a liquidation of appreciated collateral.

**Orders, Executions, Deliveries, Settlements and Oral Authorizations**
Any order which Client gives shall be binding upon Client, and Client's personal representative(s) or authorized agents until UBS PaineWebber receives notice of Client's death, in the case of an individual, or dissolution, in the case of an entity. Such death or dissolution and notice will not affect UBS PaineWebber's right to take any action which UBS PaineWebber could have taken if Client had not died or been dissolved. Client agrees that UBS PaineWebber shall incur no liability in acting upon oral instructions given to UBS PaineWebber by Client or Client's authorized agent concerning the Account. In giving orders to sell, Client will inform UBS PaineWebber

14

which sales are "short" sales and which are "long" sales. A "short" sale means any sale of a security not owned by the seller or any sale that is consummated by delivery of a borrowed security. The designation of a sale order as "long" is Client's representation that Client owns the security, and if the security is not in UBS PaineWebber's possession at the time of the contract for sale, Client agrees to deliver it to UBS PaineWebber by the settlement date. In case of non-delivery of a security, UBS PaineWebber is authorized to purchase the security to cover Client's position and charge any loss, commissions and fees to the Account. Client agrees that if UBS PaineWebber fails to receive payment for securities purchased by Client, UBS PaineWebber may, without prior demand or notice, sell securities or other Property held by UBS PaineWebber in any of Client's accounts with UBS PaineWebber and any resulting loss may be charged to the Account. Client understands and acknowledges that securities can be traded in more than one marketplace. Unless Client directs that an order to purchase or sell securities be executed on a specified exchange or market and UBS PaineWebber agrees to such execution, UBS PaineWebber will, in its sole discretion, subject to applicable regulatory requirements and without prior notification to Client, execute the order on the over-the-counter market in any location or on any exchange, including a foreign exchange where such security is traded, either on a principal or agency basis.

### Non-disclosure of Confidential and Material, Non-public Information

UBS PaineWebber provides a variety of services to its customers. In connection with providing these services, employees of UBS PaineWebber may from time to time come into possession of confidential and material, non-public information. Under applicable law, employees of UBS PaineWebber are prohibited from improperly disclosing or using such information for their personal benefit or for the benefit of any other person, regardless of whether such other person is a customer of UBS PaineWebber. UBS PaineWebber maintains and enforces written policies and procedures that (1) prohibit the communication of such information to persons who do not have a legitimate need to know and (2) assure that UBS PaineWebber meets its obligations to customers and otherwise remains in compliance with applicable law. Client understands and agrees that these policies and procedures are necessary and appropriate and recognizes that, in certain circumstances, employees of UBS PaineWebber will have knowledge of certain confidential and material, non-public information which, if disclosed, might affect Client's decision to buy, sell or hold a security, but that they shall be prohibited from communicating such information to Client. Client also understands and agrees that UBS PaineWebber shall have no responsibility or liability to Client for failing to disclose such information to Client as a result of following its policies and procedures designed to provide reasonable assurances that it is complying with the law.

### Non-U.S. Securities

If the Account contains securities issued by a non-U.S. issuer, Client acknowledges, to the extent UBS PaineWebber is acting solely as a custodian with respect to such securities, that absent arrangements by either the issuer or Client with UBS PaineWebber to the contrary regarding distribution of issuer communications, UBS PaineWebber will not be obligated to distribute issuer communications to Client.

### Restrictions on Trading

Client understands that UBS PaineWebber may, in its sole discretion, with or without prior notice, prohibit or restrict trading of securities or substitution of securities in the Account and refuse to enter into any transactions with Client.

### Deposits of Funds

All checks for deposit to the Account should be made payable to, or be endorsed to, UBS PaineWebber Inc.

### Electronic Transfer of Funds

When giving UBS PaineWebber instructions to accept or transfer funds electronically to or from the Account to any bank or other entity, Client agrees to provide UBS PaineWebber with an accurate name and account number designating the account to receive such funds. Client acknowledges that neither UBS PaineWebber nor the bank or other receiving or transmitting entity is under any obligation to verify the identity of the beneficiary of the funds transfer and may rely exclusively upon the name or account number provided by Client. Client agrees to

indemnify and hold UBS PaineWebber harmless from and against any and all cost, expense, claims or liabilities arising from the provision by Client of an inaccurate name or account number. When accepting or transferring funds, neither UBS PaineWebber nor the bank or other receiving or transmitting entity is under any obligation to determine whether the name and number provided by Client refer to the same person or entity.

### Transfer of Excess Funds; Exchange Rate Fluctuations

UBS PaineWebber may transfer excess funds between any of Client's accounts (including the Account) with UBS PaineWebber (including commodity accounts) for any reason not in conflict with the Commodity Exchange Act or any other applicable law. If UBS PaineWebber effects any transactions for Client requiring a foreign currency, any profit or loss as a result of a fluctuation in the applicable exchange rate will be charged or credited to the Account.

### Principal, Interest and Dividend Payments

With respect to principal and interest payments on debt instruments, UBS PaineWebber may credit the Account with principal and interest due on the payment dates and UBS PaineWebber will be entitled to recover any such payments from Client if the same are not actually received by UBS PaineWebber from the trustee or paying agent. Client acknowledges that interest will not be paid to Client on credit balances in the Account unless specifically agreed to by UBS PaineWebber in writing. UBS PaineWebber is not required to remit interest or dividends to Client on a daily basis.

### Fees and Charges

Client understands that UBS PaineWebber may impose various service charges and other fees relating to the Account (see "Selected Fees and Charges" in the Disclosure Documents) as well as charge commissions and/or other fees for execution of transactions to purchase and sell securities, options or other Property, and Client agrees to pay such charges, commissions and/or fees at UBS PaineWebber's then prevailing rates. Client also understands that such charges, commissions and/or fees may be imposed or changed from time to time without notice to Client, unless required by rules or regulations, and Client agrees to be bound thereby. Client may be subject to an account transfer fee if Client instructs UBS PaineWebber to transfer the Account and to an administrative fee for the Account if it produces insufficient commission revenue for any 18-month period. UBS PaineWebber will notify Client prior to charging either fee. Client agrees to pay a late charge, to the extent permitted by law, if Client purchases securities on a cash basis and fails to pay for such securities by the settlement date. Any late charge UBS PaineWebber may impose will be at the maximum rate of interest set forth in UBS PaineWebber's then current "Statement of Credit Practices" (which is found in the Disclosure Documents), if applicable, or otherwise at the maximum rate permissible by law, and may be charged from the settlement date to the date of payment, without regard to UBS PaineWebber's rights to sell the securities in accordance with this Agreement and applicable laws, rules and regulations. Client may obtain UBS PaineWebber's then current fees and charges by contacting Client's Financial Advisor or the local branch office.

### Interest Charges

All amounts advanced and other balances due shall be charged interest in accordance with UBS PaineWebber's usual custom, which may include the compounding of interest, including any increases in rates which reflect adjustments in, as applicable, UBS PaineWebber's Base Loan Rate (as such term is defined in the Statement of Credit Practices) or other reference rate (i.e., LIBOR Rate or Prime Rate) referred to in the applicable Statement of Credit Practices and such other charges as UBS PaineWebber may make to cover UBS PaineWebber's facilities and extra services.

### Impartial Lottery Allocation System; Call Features

When UBS PaineWebber holds on Client's behalf bonds or preferred stocks in UBS PaineWebber's (street) name or in bearer form which are callable in part, Client agrees to participate in the impartial lottery allocation system of the called securities in accordance with the provisions of the New York Stock Exchange, Inc. rules. Further, Client understands that when the call is favorable, no allocation will be made to any account in which UBS PaineWebber, its officers, or employees, have a beneficial interest until all other Clients' positions in such securities are satisfied on an

impartial lottery basis. Client understands that UBS PaineWebber may not receive timely notice of calls and may be required to allocate called securities on an "as of" basis. In those cases, Client agrees to participate in the lottery allocation system and to be bound by its results. For debt securities, call or other redemption features, in addition to those disclosed on the trade confirmation, may exist. Debt securities subject to call or redemption features, such as sinking funds, may be redeemed in whole or in part before maturity, or before the first scheduled call dates. The existence of sinking funds, or other special mandatory redemption features, may not be disclosed on a trade confirmation. It is Client's obligation to review all prospectuses and offering statements Client may receive, and to understand the risks of extraordinary calls or early redemptions, which may affect yield. Issuers may from time to time publish notices of offers to redeem debt securities within limited time, price and tender parameters. Client understands and agrees that UBS PaineWebber is not obligated to notify Client of such published calls, nor will UBS PaineWebber tender any securities on Client's behalf when Client has failed to request the tender in a timely manner.

### Disability or Incompetency

This Agreement shall survive the death, dissolution, disability or incompetence of Client.

### Unforeseeable Events/Force Majeur

UBS PaineWebber shall not be liable for losses caused directly or indirectly by government restrictions, exchange controls, exchange or market rulings, suspension of trading, act of war, strikes or other conditions beyond UBS PaineWebber's control, including but not limited to, extreme market volatility or trading volumes.

### Successors and Assigns

This Agreement shall be binding upon Client and Client's personal representatives, heirs, estate, executors, administrators, committee and/or conservators, successors and assigns, and shall inure to the benefit of UBS PaineWebber and its successors and assigns and each subsequent holder of this Agreement. Client may not assign or transfer any of Client's rights or obligations under this Agreement without UBS PaineWebber's prior written consent. UBS PaineWebber may assign this Agreement or any of its rights and powers under this Agreement, and, in the event of such assignment, the assignee shall have the same rights and remedies as if originally named in this Agreement in UBS PaineWebber's place. From and after the date of any such assignment, UBS PaineWebber shall have no further liability to Client under the terms of this Agreement.

### Sub-Brokers

UBS PaineWebber may employ sub-brokers and shall be responsible only for reasonable care in their selection. UBS PaineWebber may deal with market makers or members of any exchange known as specialists or known as odd-lot dealers and in the execution of Client's orders they may act as sub-brokers for Client and may also buy or sell the Property for themselves as dealers for their own account.

UBS PaineWebber may hold securities as a Securities Intermediary in accordance with industry custom and practice and employ one or more Securities Intermediaries, including Securities Intermediaries outside the United States, with respect to any and all Property held for Client.

### Introduced Accounts

If the Account has been introduced to UBS PaineWebber and is carried by UBS PaineWebber only as a clearing broker, Client agrees that UBS PaineWebber is not responsible for the conduct of the introducing broker and UBS PaineWebber's only responsibilities to Client relate to UBS PaineWebber's execution, clearing and bookkeeping of transactions in the Account. During the term of any clearing agreement between UBS PaineWebber and any introducing broker/dealer that UBS PaineWebber is providing clearing services for, UBS PaineWebber's rights and benefits under this Agreement shall inure to any such introducing broker/dealer. UBS PaineWebber is authorized to accept from the introducing broker, without further inquiry or investigation by UBS PaineWebber, (a) orders for the purchase or sale in the Account of such securities and other Property on margin or otherwise, and (b) any other instructions from the introducing broker concerning the Account. In no event shall UBS PaineWebber be liable for any acts or omissions of any introducing broker or its agents, contractors or employees.

UBS-EFRON_ 003775

## Changes to Agreement

Upon written notice to Client, UBS PaineWebber may change this Agreement at any time and may cease to offer any or all services described in this Agreement. Any such change will become effective on the date of the notice unless the notice specifies a later date. However, Client will remain liable for any outstanding debits and/or charges in the Account. Client's continued acceptance of services under this Agreement will be deemed to constitute acceptance of such change. All other changes to this Agreement shall not be effective except by a writing signed by UBS PaineWebber.

## Termination of Account

Client understands that UBS PaineWebber or Client may terminate the Account or any Account feature or service at any time and for any reason. If the Account is terminated either by UBS PaineWebber or Client, Client will promptly return any unused checks and Card(s). Failure to return such checks and Card(s) to UBS PaineWebber may result in a delay in complying with Client's instructions as to the disposition of Client's assets in the Account. Client will remain responsible for debits and charges whether arising before or after such termination. Client agrees to pay UBS PaineWebber and the Card Issuer and the Check Provider promptly for all amounts outstanding in the Account. Upon termination, Client authorizes UBS PaineWebber to redeem all of Client's securities that cannot be transferred into Client's name. Client further agrees that UBS PaineWebber may withhold from the assets then in the Account any amounts that UBS PaineWebber reasonably believes necessary to pay for any outstanding debts to UBS PaineWebber or the Card Issuer and the Check Provider or their respective affiliates or subsidiaries, and to apply such assets first to pay UBS PaineWebber, and second to pay the Card Issuer and the Check Provider.

## Additional Documentation

Should any supplemental agreements be required as a result of Client's request for UBS PaineWebber to approve additional services or features available from UBS PaineWebber, or be required for any other reason whatsoever, Client will execute UBS PaineWebber's form of such agreements, which shall thereupon supplement and, if applicable, become part of this Agreement and apply to the Account.

## Waiver Not Implied

UBS PaineWebber's failure to insist at any time upon strict compliance with this Agreement or with any of its terms or any continued course of such conduct on UBS PaineWebber's part shall not constitute or be considered a waiver by UBS PaineWebber of any of its rights or the obligations of Client.

## Binding Notice of Agreement

Client expressly agrees that UBS PaineWebber shall not be bound by any representation or agreement made by any of UBS PaineWebber's employees or agents which purports to affect or diminish UBS PaineWebber's rights under this Agreement.

## Accuracy of Reports; Communications

Client shall carefully review all monthly or quarterly account statements and confirmations promptly upon receipt for accuracy and consistency with Client's instructions and investment objectives. Client shall immediately notify the Branch Office Manager of the Branch Office where the Account is maintained if such documents are not received in a timely manner or are inaccurate. Confirmation of orders and monthly or quarterly statements of the Account shall be conclusive if not objected to in writing addressed to the Branch Office Manager of the Branch Office where the Account is maintained within ten days after mailing by UBS PaineWebber to Client. Client acknowledges that UBS PaineWebber may rely upon Client's failure to object in a timely manner to transactions or entries and shall not be responsible for losses which could have been avoided had Client given prompt notice as provided above. All such documents shall thereafter be deemed accurate and in accordance with Client's instructions and investment objectives. Notwithstanding the foregoing, if Client is mistakenly credited with funds or securities, Client shall promptly return such funds or securities upon Client's discovery of the error or upon request by UBS PaineWebber. UBS PaineWebber shall not be responsible for any transactions not reflected on Client's monthly or quarterly statement unless an objection is made in writing to the Branch Office Manager in accordance with the

above requirements. Client shall notify UBS PaineWebber in writing if Client does not receive a confirmation within ten days from the date of a transaction.

Client acknowledges and agrees that UBS PaineWebber may, from time to time, monitor and/or electronically record conversations between Client and UBS PaineWebber's employees or agents for the purpose of quality assurance, employee training, and the mutual protection of Client and UBS PaineWebber. Any such recordings may be offered by UBS PaineWebber as evidence in any arbitration or other proceeding relating to this Agreement or the Account.

Client acknowledges that the price of any security shown on a confirmation which has been executed on more than one exchange, or in more than one market, or had multiple executions, may be the average price of the security for those executions and agrees to the use of such average price trades on confirmations issued by UBS PaineWebber. Actual prices, quantities of each execution and market of execution shall be provided upon written request.

## Written Notice

Communications may be sent to Client at Client's address or at such other address as Client gives to UBS PaineWebber in writing. All communications so sent, whether by mail, telegraph, facsimile, electronic mail, messenger or otherwise will be considered to have been given to Client personally upon such sending, whether or not Client actually received them.

## Entire Agreement

The provisions of this Agreement constitute, and are intended to constitute, the entire agreement between Client and UBS PaineWebber with respect to the Account and supercede any prior agreements relating thereto. Other than as expressly provided in this Agreement, UBS PaineWebber does not undertake any obligations and incurs no duties or obligations other than those set forth in this Agreement, statute or government regulation.

## Applicable Law

This Agreement, its enforcement and the relationship between Client and UBS PaineWebber shall be governed by the laws of the State of New York, including the arbitration provisions contained herein, without giving effect to the choice of law or conflict of laws provisions thereof, and shall be binding upon Client, Client's authorized agents, personal representatives, heirs, successors and assigns, provided that there is no inconsistency with the federal securities laws, and provided further in connection with any Card issued, the Cardholder Agreement shall be governed by federal laws and the law designated by the Card Issuer in the Cardholder Agreement. In the event that the arbitration clause contained herein is found to be unenforceable, Client and UBS PaineWebber agree that they will, for purposes of determining all matters with regard to this Agreement, submit to the exclusive jurisdiction of the courts of the State of New York and the federal courts sitting in the Southern District of New York. Client also consents to service of process by certified mail to the Account's address of record and waives any forum non-conveniens and venue claims. Client and UBS PaineWebber agree that if any term, covenant, condition, or provision of this Agreement is held to be invalid, void, or unenforceable, the remainder of the provisions shall remain in full force and effect, and shall in no way be impaired or invalidated and shall be construed (to the maximum extent possible) in such a way as to give effect to the intent of the invalid, void, or unenforceable provision in question.

## Arbitration

• Arbitration is final and binding on the parties.

• The parties are waiving their right to seek remedies in court, including the right to jury trial.

• Pre-arbitration discovery is generally more limited than and different from court proceedings.

• The arbitrator's award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

• The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

• Client agrees, and by carrying an account for Client UBS PaineWebber agrees that, any and all controversies which may arise between UBS PaineWebber, any of UBS PaineWebber's employees or agents and Client concerning any account, transaction, dispute or the construction, performance or breach of this Agreement or any other agreement, whether entered into prior to, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this Agreement shall be held under and pursuant to and be governed by the Federal Arbitration Act, and shall be conducted before an arbitration panel convened by the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. Client may also select any other national securities exchange's arbitration forum in which UBS PaineWebber is legally required to arbitrate the controversy with Client, including, where applicable, the Municipal Securities Rulemaking Board. Such arbitration shall be governed by the rules of the organization convening the panel. Client may elect in the first instance the arbitration forum, but if Client fails to make such election by certified mail, return receipt requested, or telegram addressed to UBS PaineWebber at its main office, and to the attention of the Legal Department, before the expiration of five (5) days after receipt of a written request from UBS PaineWebber to make such election then UBS PaineWebber may make such election. The award of the arbitrators, or of the majority of them, shall be final, and judgment on the award rendered may be entered in any court of competent jurisdiction.

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; (ii) the class is decertified; or (iii) Client is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.

Client expressly agrees that service of process in any action shall be sufficient if served by certified mail, return receipt requested, at Client's last address known to UBS PaineWebber. Client expressly waives any defense to service of process as set forth above.

Item #CL-RMA-BASIC Revised 11/01

©2001 UBS PaineWebber Inc. All Rights Reserved.
Member SIPC.

UBS PaineWebber is a service mark of UBS AG.

Resource Management Account and RMA are registered service marks of UBS PaineWebber Inc.

MasterCard and Platinum MasterCard are registered trademarks and service marks of MasterCard International Incorporated.

16